UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
------------------------------------------------------------------- x

GLENN STORMAN,

                                     Plaintiff,

                -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                 Defendants.

------------------------------------------------------------------- x

**DECLARATION IN SUPPORT
OF DEFENDANT'S MOTION
TO DISMISS**

Docket No. 07 CV 5797 (SHS)

I, DANIEL CHIU, hereby declare that:

1.      I am an Assistant Corporation Counsel with the office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for defendant New York City Department of Education ("DOE"). I am familiar with the matters set forth below.

2.      This declaration is submitted in support of Defendant's motion to dismiss the complaint in this action.

3.      Annexed hereto as Exhibit "A" is a true copy of the Complaint filed by plaintiff in this action.

4.      Annexed hereto as Exhibit "B" is a true copy of a Notice of Petition and Verified Petition, dated December 11, 2006, filed by plaintiff in the Supreme Court of the State of New York, New York County.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       August 16, 2007

                                                 Daniel Chiu

# Exhibit A

JUDGE STEIN

07 CV 5797

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

GLENN STORMAN

                                      Plaintiff,

                -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                Defendant.

------------------------------------------------------------------X

Index No.

JUN 19 2007
CASHIERS

**COMPLAINT**

**PLAINTIFF DEMANDS
TRIAL BY JURY**

Plaintiff GLENN STORMAN, for his Complaint, alleges:

## PART A: ALLEGATIONS APPLICABLE TO ALL COUNT

### *1.  Jurisdiction and venue*

      1.     This is an action pursuant to Title 42 of the United States Code, Section 1983 to redress the denial to Plaintiff by Defendant of protected liberty interests and rights without due process of law.

      2.     Jurisdiction is based upon the provisions 42 U.S.C. § 1983; 28 U.S.C. § 1331; and 28 U.S.C. § 2201.

      3.     Venue is based upon the location of defendant's principal office in the City, County and State of New York, within the Southern District.

### *2.  Parties*

      4.     Plaintiff is a resident of the City of New York, County of Richmond and Sate of New York.

      5.     Defendant New York City Department of Education (NYC DOE) is an agency of the New York City government having its principal office at 52 Chambers Street in the City, County and State of New York.

### 3.   Color of State Law

6.      The Chief Executive of the NYC DOE is the Chancellor who executes the policies of the NYS DOE pursuant to the provisions of the N.Y.S. Education Law, the City Charter and the Rules and Regulations of the NYC DOE.

7.      At all pertinent times, the Chancellor and the various other employees of the NYC DOE whose actions are described herein were acting in accordance with the scope of their employment by the NYC DOE under color of law by reason of grants authority from New York State and New York City.

### 4.   Protected liberty interests at risk

8.      For over 25 years Plaintiff has been employed by the New York City Board of Education and for the last 16 years he has been employed as a guidance counselor. During this time, Plaintiff has enjoyed an excellent reputation having earned the high regard of parents, students, his teaching colleagues and supervisors.

9.      Plaintiff's tenure rights are vested in him by reason of the provisions of the New York Sate Education Law, the contract between Defendant and the his union, the United Federation of Teachers ("UFT") and rules, regulations and procedures promulgated by the defendant pursuant to its governmental power.

10.      Among the rights and privileges afforded Plaintiff by the UFT Contract are "retention rights" which allows him to obtain and retain extra-assignments including assignment as a summer school teacher and as a Home Instructor pursuant to the Defendant's Home Instruction Program.

11.      Plaintiff's vested rights of retention and his ability to pursue professional opportunities afforded him by his experience and previously unblemished reputation are all integral parts of his liberty that is protected by the United States Constitution.

12.      Annexed hereto as Exhibit A is the Annual Professional Performance Review ("Annual Review") that rated Plaintiff "U" for Unsatisfactory. and Exhibit B, the decision of the Chancellor's designee denied the appeal and sustained the rating "as a consequence of a substantiated incident of corporal punishment."

13.    As a matter of fact and law, said finding of a "substantiated incident of corporal punishment" was not substantiated for there was no evidence at any point in the process that an incident of corporal punishment occurred.

***Applicable Regulation***

14.    Annexed to this Complaint as Exhibit C is a copy of Regulation A-420 of the Chancellor. In pertinent part it defines Corporal Punishment as:

> "2. Definitions:
>
> "Regulations of the Commissioner §100.2(I)(3)(i) define corporal punishment as <u>any act of physical force upon a pupil for the purpose of punishing that pupil</u>. Such term shall not mean the use of reasonable physical force for any of the following purposes:
>
> "1. to protect oneself from physical injury;
>
> "2. to protect another pupil or teacher or any other person from physical injury (e.g. breaking up a physical altercation without using excessive force);
>
> "3. to protect the property of the school or of others; or
>
> "4. to restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district functions, powers or duties, if that pupil has refused to comply with a request to refrain from further disruptive acts, provided that alternative procedures and methods not involving the use of physical force cannot be reasonably employed to achieve the purposes set forth in 1 through 3 above." (Emphasis supplied) Exhibit C: Regulation of the Chancellor, A-420, p. 1

15.    The evidence before both the Principal who executed Exhibit A and the Chancellor's representative who signed Exhibit B does not support a determination of Corporal Punishment in that there was no evidence of any kind that Plaintiff committed an act of physical force for the purpose of punishing any pupil.

16.    The actions Plaintiff took, which did not involve the use of physical force, were, in fact, intended to calm a situation where a teacher and her class were being disrupted by the acts of a student.

17.    October 26, 2004, Plaintiff entered a classroom to obtain information about a student's attendance (Student X). In his hand, he had a rolled-up piece of paper concerning the

attendance of Student X..

18.    As he entered the classroom, Plaintiff became aware of a tumult in the classroom. A student ("Student A") was kneeling on a chair, cursing out a female substitute teacher and disrupting the class. He approached the Student A, and gesturing with the hand in which he had the piece of paper, told Student A to "Zip it."

19.    Whereupon Student A, sat down and ceased his disruptive behavior.

20.    Plaintiff did not touch Student A. In the alternative, if the paper in his hand touched Student A, it was entirely accidental and unintentional. No one in the room observed Student A touched by the paper and Plaintiff does not believe it happened. Such accidental touching, if it occurred, was slight and caused absolutely no harm or damage or injury of any kind to Student A.

21.    Plaintiff regarded the incident as closed as he had accomplished his objective which was to help the substitute teacher restore order.

22.    A few days later, the father of Student A was contacted by the principal of the school because of Student A's truancy. The father then claimed hat Student A had been sexually assaulted by Plaintiff because he had inserted a piece of paper in Student A's mouth for the purpose of obtaining sexual pleasure.

23.    That charge of inappropriate touching for sexual gratification was preposterous then and remains preposterous to this day.

24.    On November 16, 2004, the father of the child met with the principal of the school and repeated the charge.

25.    Likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Student A's father vigorously lobbied Plaintiff's supervisors to take strong action against Plaintiff and implicitly threatened legal action.

26.    Thereafter an investigation was initiated by the Chancellor's Office of Special Investigations ("OSI") which reported a substantiated incident of corporal punishment. A copy of that report is annexed hereto as Exhibit D.

27.    The investigating officer for OSI interviewed 9 students who witnessed the

incident, including Student A. None of the student witnesses, except Student A, saw any touching of Student A by Plaintiff. They did confirm Student A's disruptive behavior. Student A dropped any claim that there was a sexual connotation to the incident. He was not in fact physically harmed, but stated he was "embarrassed."

28.    Student H stated to the OSI investigator that Student A had told him that he would "get Mr. Storman." (Exhibit D, p. D-3)

29.    No where in the report does state the cause of the embarrassment claimed by Student A and as a matter of fact, Plaintiff believes if there was any embarrassment, it was caused by Plaintiff telling Student A to stop his disruptive behavior rather than any alleged, accidental physical conduct.

30.    Likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, the investigating officer did not interview the substitute teacher who was in the classroom.

31.    According the Report, Ms. Marcella stated that Plaintiff prepared a written statement that in which he made an admission that he had touched Student A's mouth with a piece of paper in an effort to quiet him. Plaintiff denies ever making such an admission and no such written statement is a part of this record.

32.    The investigating officer later interviewed Plaintiff. No recording or transcript of the of the interview was made. A representative of the United Federation of Teachers (UFT), Plaintiff's union was present.

33.    According to the OSI report:

> "Mr. Storman stated that he went to Student A's class to pick up a student that he services. The class had a substitute teacher. Student A was talking in a disrespectful manner to the teacher and was cursing. He approached Student A and he was holding a rolled up piece of paper in his hand. He might have brushed the piece of paper against Student A's lips and told him to be quiet. Mr. Storman denied that his actions were sexual in any way. Mr. Storman further stated that in retrospect he should not have touched Student A with the piece of paper."

34.    Plaintiff denies stating to the investigating officer that he might have brushed the piece of paper against Student A's lips.

35.    The report concluded that:

"The allegation that Mr. Glen Storman placed a rolled up piece of paper into
the mouth of Student A in a sexual manner is unsubstantiated. However, that
Mr. Storman should not have made physical contact with Student A when he
was reprimanding him."

36.    The Report of the investigation was forwarded to Plaintiff's supervising principal,
Ms. Josephine Marcella with the following notation:

"The Chancellor's Office of Special Investigations has completed its
investigation into the allegations of corporal punishment against Mr. Glen
Storman [sic], [Social Security Number deleted] Based on information and
facts gained during the investigation, it has been determined that this matter
is:

"SUBSTANTIATED:     [ X ]
"UNSUBSTANTIATED:" [   ]

(Exhibit D, p. D-1)

37.    The contents of said Report did not substantiate allegations of corporal
punishment against Plaintiff. (See Report, Exhibit D, pp. D-2 to D-4)

38.    On being advised the findings of the Report, Mr. Solomon, the UFT
representative who was present, issued the following statement:

"The last statement, paraphrasing Mr. Storman regretting touching Student
A, was taken out of context. He said that he may have moved towards him,
and if he touched him with the paper in his hand, it was accidental." (See
Ex. E, Excerpt of Transcript, pp. 49-50)

39.    Thereafter, in June, 2005, Exhibit A was issued rating Mr. Storman "U"
[unsatisfactory] on account of "Substantiated Corporal punishment at P.S. 212" (Exhibit A)

40.    In violation of DOE policy, the Review was not provided Plaintiff in a timely
manner. Thereafter, Plaintiff appealed his rating.

41.    A hearing was held on his appeal on May 23, 2006. At that hearing both the
investigating officer and the Supervising Principal admitted that Mr. Storman's conduct did not
constitute corporal punishment. Exhibit E, p. 38-40.

42.    A determination issued on August 14, 2006 denying Plaintiff's Appeal and

sustaining his "U" rating on "as a consequence of a substantiated incident of corporal punishment." (See Exhibit B)

43.    A timely Notice of Claim was served upon the Department of Education, the New York City Comptroller and the New York City Corporation Counsel on November 8, 2006. Said matter has not been resolved and no hearing held.

44.    The determination that there was a "substantiated incidence of corporal punishment" is devoid of any legal or factual basis.

## 5.  *Injustice and damage to the Plaintiff*

45.    The finding that Plaintiff has been guilty of an incidence of corporal punishment is gravely damaging to Plaintiff both financially and professionally.

46.    Until the finding of substantiated corporal punishment, Plaintiff had enjoyed an unblemished reputation as an able capable professional. Now, he will be forever marked by this finding and it will be a hindrance to him both as an employee of the DOE and in seeking employment in any other place.

47.    In addition, Plaintiff has lost his retention right to earn extra income from the DOE both as a Summer School teacher and Per Session Home Instructor.

48.    The reduction of income from his loss of Summer School teaching and Per Session Home Instructor will be compounded for decades because it will reduce his income against which his pension will be calculated.

49.    That by reason of the foregoing, Plaintiff has lost financial benefits for the year 2005 in the sum of $23,000 and will lose financial benefits in excess of $600,000 in future years, including a reduction of reasonably anticipated pension benefits..

## 6.  *Denial of Due process*

50.    The stigma of being found guilty of a "substantiated incident of corporal punishment" damages beyond repair Plaintiff's ability to pursue his chosen profession, in addition to denying him rights vested by the UFT Contract.

51.    The Fourteenth Amendment of the United States Constitution requires that in

cases in which important liberty rights are implicated, that any deprivation of those liberty rights can only occur after notice and hearing and any adverse determination must be supported by a preponderance of the evidence.

52.     The determination of the Defendant that the Plaintiff was guilty of a substantiated incident of corporal punishment is arbitrary and capricious.

53.     Said determination is not supported by either a preponderance of the evidence or substantial evidence and is, in fact, devoid of any supporting evidence.

54.     By reason of said determination, acting under color of law, Defendant has deprived Plaintiff of his liberty and property without due process of law.

## PART B: CLAIMS FOR RELIEF

### COUNT ONE: Declaratory Judgment

55.     Plaintiff repeats each and every allegation contained in paragraphs "1 to 54" hereof as though the same were hereinafter more completely set forth.

56.     By reason of the premises aforesaid, Defendant acting under color of law has deprived the Plaintiff of his liberty rights and property without due process of law in violation of 42 U.S.C. § 1983.

57.     Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to decree that the "U" rating is void, illegal and improper.

58.     By reason of the premises aforesaid, Defendant acting under color of law has deprived the Plaintiff of his liberty rights and property without due process of law in violation of 42 U.S.C. § 1983.

59.     Pursuant to 28 U.S.C. § 2202, Plaintiff is entitled to an order directing the Defendant to  remove all references to the charges from the employee's personnel file(s) and adding evidence of the unfounded nature of the charge to departmental files that may have to be maintained to satisfy other legal requirements, if any; and restoring any back pay owed with interest and, at the employee's request, confirming to any regulatory agency the finding that the employee was falsely accused.

60.     By reason of the premises aforesaid, Plaintiff prays that the Court enter an order

(1) reversing the decision of the Commissioner of Education, dated the August 14, 2006 which dismissed plaintiff's appeal, (2) quashing, vacating and expunging his 2005 Annual Review in that it rated him "U" and recited that Plaintiff has been guilty of substantiated corporal punishment; (3) directing that an annual review be issued for 2005 with an "S" rating; (4) awarding Plaintiff the sum of $23,000 for lost annual benefits for the year 2005 and adjusting his retirement benefits to reflect that payment; (5) directing that he be considered for all extra assignments including summer school on the basis of his seniority and experience excluding any consideration of the alleged incident of corporal punishment

## COUNT TWO: Damages for Denial of Due Process

61.    Plaintiff repeats each and every allegation contained in paragraphs "1 to 52" hereof as though the same were hereinafter more completely set forth.

62.    By reason of the premises aforesaid, Defendant acting under color of law has deprived the Plaintiff of his liberty rights and property without due process of law in violation of 42 U.S.C. § 1983.

63.    By reason of the premises aforesaid, Plaintiff has been damaged in his property by reason of lots income and reasonably anticipated retirement benefits in the some of $600,000.

64.    Defendant's actions has caused Plaintiff severe emotional distress and anxiety, caused him to lose sleep and suffer pain and anguish because of the threat to his continued employment and the destruction of his career and reputation.

65.    The actions of the defendant damaged Plaintiff's otherwise harmonious relationship with his wife, creating domestic friction, further causing and enhancing his emotional distress.

66.    By reason of his emotional distress and damage to his marital relationship, plaintiff has been damaged in sum to be determined but not less than $1,000,000.

67.    By reason of the premises aforesaid the Plaintiff is entitled to judgment in the sum of $1,600,000 together with the costs and disbursements of this action including reasonable attorney fees pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiff prays that Court enter Judgment as prayed for in COUNTS ONE and TWO (1) reversing the decision of the Commissioner of Education, dated the August

14, 2006 which dismissed plaintiff's appeal, (2) quashing, vacating and expunging his 2005 Annual Review in that it rated him "U" and recited that Plaintiff has been guilty of substantiated corporal punishment; (3) directing that an annual review be issued for 2005 with an "S" rating; (4) awarding Plaintiff the sum of $23,000 for lost annual benefits for the year 2005 and adjusting his retirement benefits to reflect that payment; (5) directing that he be considered for all extra assignments including summer school on the basis of his seniority and experience excluding any consideration of the alleged incident of corporal punishments; and (6) awarding Plaintiff judgment in the sum of $1,600,000 together with the costs and disbursements of this action including reasonable attorney fees.

Dated: New York, New York
      June 19, 2007

                                    JOHN C. KLOTZ
                                 Attorney for Plaintiff
                            350 Fifth Avenue, Suite 4810
                            New York, New York 10118
                               (212) 630-2600

NEW YORK CITY BOARD OF EDUCATION
DIVISION OF PERSONNEL
OFFICE OF APPEALS AND REVIEWS
65 Court Street, Brooklyn, New York 11201
BE/DOP 996AC (5/82) pass d1  (Replaces OP 158)

**ANNUAL PROFESSIONAL PERFORMANCE
REVIEW AND REPORT ON PROBATIONARY
SERVICE OF GUIDANCE COUNSELOR**

| EMPLOYEE'S FULL NAME | LICENSE | FILE NUMBER |
|---|---|---|
| GLENN STURMAN | Guidance | 478435 |

| EMPLOYEE'S COMPLETE HOME ADDRESS (Number and Street) | | APT. NO. | SOCIAL SECURITY NUMBER |
|---|---|---|---|
| 136 Vassar St. Staten Island | | | 1 0 7 4 2 3 5 6 8 |

| CITY | STATE | ZIP CODE | TENURED | PROBATIONER | SUBSTITUTE |
|---|---|---|---|---|---|
| Staen Island | N.Y. | 10314 | | X | |

| CURRENT SALARY RATE | FOR PROBATIONERS: Date of Appointment | Date of Completion of Probation |
|---|---|---|
| $ | (Jaema Credit does not apply) | |

| SCHOOL | BOROUGH | DISTRICT |
|---|---|---|
| P.S. 153 | Bklyn. | 21/7 |

| | FIRST YEAR | | | | SECOND YEAR | | | | THIRD YEAR | | | | DAYS IN C.A.R. | OR BOR-ROWED DAYS | SUBSTI-TUTE SERVICE NO. OF DAYS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | TIMES NO. | TIME LOST | | | TIMES NO. | TIME LOST | | | TIMES NO. | TIME LOST | | | | | |
| | | DAYS | HRS. | MIN. | | DAYS | HRS. | MIN. | | DAYS | HRS. | MIN. | | | |
| LATENESS* | — | — | — | — | | | | | | | | | | | |
| ABSENCE* Exclude Non-Attendance | 2 | 2 | — | — | | | | | | | | | 135 | | |

*NOTE: For reports on probationers complete 1 to 3 years as applicable. For all other personnel use "First Year" to denote current year.

## SECTION 1 - REPORT BY PRINCIPAL OR OTHER APPROPRIATE SUPERVISOR:

| COMMENTS (as checked. "NA" indicates "Not Applicable.") | SATIS-FACTORY | UNSATIS-FACTORY | ADDITIONAL COMMENTS |
|---|---|---|---|
| **A. PERSONAL AND PROFESSIONAL QUALITIES** | | | |
| 1. Attendance and punctuality | | | |
| 2. Personal appearance | | | |
| 3. Voice, speech and use of English | | | |
| 4. Professional attitude and professional growth | | U | |
| 5. Sympathetic understanding of children | | | |
| 6. Resourcefulness and initiative | | | |
| **B. GUIDANCE ACTIVITIES** | | | |
| 1. Individual counseling with pupils | | | |
| 2. Group counseling with pupils | | | |
| 3. Individual staff development with teachers | | | |
| 4. Group staff development with teachers | | | |
| 5. Individual consultation with parents | | | |
| 6. Group consultation with parents | | | |
| 7. Preparation, maintenance and use of guidance materials | | | |
| 8. Participation in school activities | | | |
| 9. Participation in community activities | | | |
| 10. Agency referrals | | | |
| **C. GUIDANCE OFFICE MANAGEMENT** | | | |
| 1. Appearance and organization of office | | | |
| 2. Records and reports | | | |
| 3. Effective scheduling of time | | | |
| **D. INTERPERSONAL RELATIONSHIPS** | | | |
| 1. Rapport with pupils | | | |
| 2. Maintenance of good relations with teachers and with supervisors | | | |
| 3. Effort to establish and maintain good relationships with parents | | | |
| 4. Relationships with other pupil personnel workers | | | |

E. ADDITIONAL REMARKS (additional sheets, signed and acknowledged may be attached):

   Substantiated Corporal Punishment at P.S. 212

## SECTION 2 - PERFORMANCE EVALUATION

| OVERALL EVALUATION  S, U, or D (D for first year probation only) | SIGNATURE OF PRINCIPAL (if other - give title) | ACKNOWLEDGMENT BY EMPLOYEE I have received this report on: |
|---|---|---|
| U | C. Sturl Mai   6/30/05   DATE | 09/07/05   DATE   SIGNATURE OF EMPLOYEE |
| For the period: From 9/04 to 6/05 | | |

*(Complete Reverse Side for Probationary Personnel Only)*

**EXHIBIT A: Annual Review**

# THE NEW YORK CITY DEPARTMENT OF EDUCATION

JOEL I. KLEIN, *Chancellor*

OFFICE OF THE CHANCELLOR
52 Chambers Street - New York, NY 10007

August 14, 2006

*Chancellor's Committee*
*Ira Goldberg, Chairperson*

*Richard D'Auria, L.I.S., and Superintendent*
*District 21, Region 7*
*715 Ocean Terrace – Bldg. A*
*Staten Island, NY 10301*

*Carl Santa Maria, Principal*
*P.S. 153*
*1970 Homecrest Avenue*
*Brooklyn, NY 11229*

*Josephine Marsala, Principal*
*P.S, 212K*
*87 Bay 49ʰ Street*
*Brooklyn, NY 11214*

*Glenn Storman – File No. 478435*
*136 Vassar Street*
*Staten Island, NY 10314*

*Dear Ms. Marsala and Gentlemen:*

*Please be advised that the appeal of Mr. Glenn Stroman from the rating of "Unsatisfactory" for the period ending June 2005 has been denied and the said rating is sustained as a consequence of a substantiated incident of corporal punishment.*

*Sincerely,*

*Andrés Alonso*
*Deputy Chancellor,*
*Teaching and Learning*
*(as designee for Joel I. Klein, Chancellor)*

*AA:rs*

*c:    Gary Barton, Deputy Executive Director, Regional Field Services*
*Yvonne Kong, Director, Pedagogic Compensation*
*Genevieve Aloia, Teacher Records*
*Michael Grossman, Advisor, UFT*

**EXHIBIT B: Chancellor's Determinatiom**



NEW YORK CITY DEPARTMENT OF EDUCATION

# Regulation of the Chancellor

| | | |
|---|---|---|
| Category: | STUDENTS | Number: **A-420** |
| Subject: | PUPIL BEHAVIOR AND DISCIPLINE – CORPORAL PUNISHMENT | Pages: 1 of 5 |
| | | Issued: 11/16/04 |

## ABSTRACT

This regulation updates and supersedes Regulation of the Chancellor A-420, dated July 1, 2001, regarding prohibition of corporal punishment. It enforces Department of Education Bylaws and includes reporting requirements established under Regulations of the Commissioner §100.2(l)(3)(ii) concerning the use of physical force upon a student for punishment purposes. The Chancellor may change this Regulation consistent with applicable federal and state laws.

## 1. INTRODUCTION

Corporal punishment is prohibited. Disruptive behavior by a student must never be punished by use of physical force. Such behavior usually reflects underlying problems that require guidance intervention. School personnel should take steps to identify the problem(s) and, working closely with parents, help the student receive maximum benefit from the educational program offered at the school. Matters concerning student behavior should be addressed in accordance with Chancellor's Regulation A-443 and the Discipline Code.

## 2. DEFINITIONS

Regulations of the Commissioner §100.2(l)(3)(i) define corporal punishment as any act of physical force upon a pupil for the purpose of punishing that pupil. Such term shall not mean the use of reasonable physical force for any of the following purposes:

1.  to protect oneself from physical injury;

2.  to protect another pupil or teacher or any other person from physical injury (e.g. breaking up a physical altercation without using excessive force);

3.  to protect the property of the school or of others; or

4.  to restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district functions, powers or duties, if that pupil has refused to comply with a request to refrain from further disruptive acts, provided that alternative procedures and methods not involving the use of physical force cannot be reasonably employed to achieve the purposes set forth in 1 through 3 above.

 NEW YORK CITY DEPARTMENT OF EDUCATION

# Regulation of the Chancellor

| | |
|---|---|
| Category: STUDENTS | Number: A-420 |
| Subject: PUPIL BEHAVIOR AND DISCIPLINE -- CORPORAL PUNISHMENT | Pages: 2 of 5 |
| | Issued: 11/16/04 |

Further, the Bylaws of the City Department of Education state the following:

**NO CORPORAL PUNISHMENT SHALL BE INFLICTED IN ANY OF THE PUBLIC SCHOOLS, NOR PUNISHMENT OF ANY KIND TENDING TO CAUSE EXCESSIVE FEAR OR PHYSICAL OR MENTAL DISTRESS. VIOLATION OF THIS BYLAW SHALL CONSTITUTE GROUNDS FOR DISMISSAL.**

This Bylaw remains in full force and effect and cannot be waived by prior approval or consent of parent or guardian. Nothing in this Regulation, however, prevents a supervisor from counseling or disciplining an employee for inappropriate conduct that is not otherwise in violation of this regulation.

3. **NOTIFICATION TO STAFF**

   The principal must bring to the attention of all members of the staff the Board's policy and rules with respect to corporal punishment.

4. **REPORTING AN ALLEGATION OF CORPORAL PUNISHMENT**

   A.    Report to the Office of Special Investigations:

   > Office of Special Investigations
   > 49 Chambers Street – 6th floor
   > NY, NY 10007
   > Voice: (212) 374-5900
   > Fax:   (212) 374-1229/0932

   The Chancellor's Office of Special Investigations is responsible for intake, evaluation, review, follow-up, and dissemination of information to various offices within this agency and other appropriate entities with respect to allegations of corporal punishment. All allegations of corporal punishment of students by Department of Education employees, custodial employees, or others must be reported *immediately* to the Office of Special Investigations by the supervisor or designee.[1] Telephone communication must occur before an investigation is commenced by the supervisor or designee.

---

[1] For purposes of this Regulation, "supervisor" means the person acting in a supervisory capacity to the Department of Education employee alleged to have engaged in corporal punishment. If the person who is alleged

**EXHIBIT C: Chancellor's Regulation A-420 (Corporal Punishment)**    C-2



NEW YORK CITY DEPARTMENT OF EDUCATION

# Regulation of the Chancellor

| | |
|---|---|
| Category: **STUDENTS** | Number: **A-420** |
| Subject: PUPIL BEHAVIOR AND DISCIPLINE – CORPORAL PUNISHMENT | Pages: 3 of 5 |
| | Issued: 11/16/04 |

At the time of the communication the supervisor will be advised whether to conduct an investigation or await an investigation by the Office of Special Investigations. Further instruction will be given with respect to completing the A-420/A-421 Form – Alleged Corporal Punishment and/or Verbal Abuse – Report of Investigation (see Appendix), and to whether the staff member who is alleged to have engaged in corporal punishment should be removed from the classroom pending further inquiry. If the supervisor is not the Principal or site supervisor and the alleged corporal punishment occurs on or around school property, the principal or site supervisor must be notified. The principal, in turn must notify the superintendent.

In the event the supervisor is instructed to conduct the investigation, the Office of Special Investigations will provide guidance and instruction at any stage of the inquiry, as needed.

In general, a supervisor should take the following steps, among others:

- Take written statements from the victim and all witnesses as quickly as practicable;

- Separate witnesses prior to taking such statements;

- Meet with the subject of the investigation and give him or her an opportunity to review statements from the victim(s);

- Evaluate all of the evidence and the credibility of all witnesses including the subject of the investigation before substantiating or unsubstantiating a complaint.

- The supervisor must reach and state a conclusion on the A-420/A-421 Form.

- During the course of the investigation, the employee should be removed from the classroom whenever appropriate to safeguard the health, welfare, and safety of students. In determining whether to remove a teacher, the supervisor should consider the prior record of the employee, the likely penalty should the allegations be substantiated, and any other factors relevant to this determination. An employee who has been removed from the classroom pending investigation shall be informed in writing of the nature of the investigation no later than five days after their removal.

---

to have engaged in corporal punishment is not an employee of the Department of Education, the "supervisor" is the person who is in charge of the site where the incident is alleged to have occurred.

**EXHIBIT C: Chancellor's Regulation A-420 (Corporal Punishment)**    **C-3**



NEW YORK CITY DEPARTMENT OF EDUCATION

# Regulation  of the Chancellor

| | | |
|---|---|---|
| Category: | **STUDENTS** | Number: **A-420** |
| Subject: | PUPIL BEHAVIOR AND DISCIPLINE – CORPORAL PUNISHMENT | Pages: 4 of 5 |
| | | Issued: 11/16/04 |

- Supervisors should consult with OSI whenever technical assistance or other assistance is needed.

The A-420/A-421 Form, completed as instructed, and bearing an original signature of the site administrator, must be filed with the Office of Special Investigations no later than five working days from the report of the incident. However, a supervisor must complete his or her investigation and determine whether discipline is warranted even if he or she fails to file the report within five days. A duplicate of the A-420/A-421 Form must be forwarded to the Superintendent.

The A-420/A-421 Form (Alleged Corporal Punishment and/or Verbal Abuse – Report of Investigation) should be completed and transmitted by e-mail or fax to the Office of Special Investigations and the Superintendent. The accurate transmission of the completed form is the responsibility of the supervisor. If the A-420/A-421 Form is transmitted by e-mail, the principal must print, sign, and maintain a hard copy.

Whether the investigation is conducted by the Office of Special Investigations or the supervisor, the person alleged to have engaged in corporal punishment must be afforded an opportunity to appear with representation and address the allegations upon 48 hours written notice prior to any action being recommended or taken.

The Principal, in consultation with the Superintendent, and with the Office of Legal Services, or the Office of Appeals and Review must take appropriate action against any staff member found to be in violation of the above Bylaw and this Regulation.

When it has been concluded after an inquiry either by the supervisor or the Office of Special Investigations that the staff member has not committed corporal punishment, or the evidence does not support the allegation, the staff member must be so notified, in writing. If the employee was reassigned during the investigation and there is no other reason for reassignment, the employee must be returned to his or her regular assignment.

B. Report to the State

The Regulation of the Commissioner of Education regarding corporal punishment requires a semi-annual report to the Commissioner by January 15th and July 15 of each year. The report sets forth the substance of each complaint about the use of corporal punishment received by the local school authorities during the

**EXHIBIT C: Chancellor's Regulation A-420 (Corporal Punishment)**    **C-4**



NEW YORK CITY DEPARTMENT OF EDUCATION

# Regulation *of the Chancellor*

| Category: | STUDENTS | Number: | A-420 |
|---|---|---|---|
| Subject: | PUPIL BEHAVIOR AND DISCIPLINE -- CORPORAL PUNISHMENT | Pages: | 5 of 5 |
| | | Issued: | 11/16/04 |

report period, the results of each investigation and the action, if any, taken by the local school authorities in each case.

The Summary Corporal Punishment/Verbal Abuse Form is to be completed by December 15th and June 15th of each year. It is to be signed by the Principal and forwarded to the appropriate Superintendent for signature. The Superintendent is to forward the form to the Office of Special Investigations, Corporal Punishment Unit by December 30th and June 30th of each year.

**5.    INQUIRIES**

Inquiries pertaining to this regulation should be addressed to:

| Telephone<br>212-374-5900 | *Office of Special Investigations*<br>NYC Department of Education<br>49 Chambers Street – 6th floor<br>NY, NY 10007 | Fax<br>212-374-1229<br>212-374-0932 |
|---|---|---|

**EXHIBIT C: Chancellor's Regulation A-420 (Corporal Punishment)**    **C-5**

# THE NEW YORK CITY DEPARTMENT OF EDUCATION
### JOEL I. KLEIN, *Chancellor*
## OFFICE OF THE CHANCELLOR

**TO:**   Ms. Josephine Marsella

**FROM:**   Thomas Hyland
Deputy Director

**SUBJECT:**   Mr.Glenn Storman
Tenured Teacher, File # 478435
PS 212K/Region 76
Case # 04-7998CP

---

The Chancellor's Office of Special Investigations has completed its investigation into the allegations of corporal punishment against Mr. Glen STorman, SS# 0107-42-3568. Based on information and facts gained during the investigation, it has been determined that this matter is:

SUBSTANTIATED:   ☒

UNSUBSTANTIATED:   ☐

If this matter was substantiated a copy of this office's closing memorandum will be mailed to you for review and appropriate action. If this matter is unsubstantiated and the above named individual has been reassigned as a result of this investigation, please return him/her to service immediately.

Should you have any questions or need assistance, please call Confidential Investigator Dennis Boyles, at (212) 374-7835.

---

**EXHIBIT D: OSI Report**          **D-1**

**THE NEW YORK CITY DEPARTMENT OF EDUCATION**
JOEL I. KLEIN, *Chancellor*

OFFICE OF THE CHANCELLOR

---

## MEMORANDUM

DATE:        February 9, 2005

TO:          Thomas W. Hyland
             Deputy Director

FROM:        Dennis Boyles
             Confidential Investigator

SUBJECT:     Mr. Glen Storman
             Guidance Counselor, Tenured Teacher, File # 478435
             PS 212K/Region 7
             Case # 047998

---

### ORGIN OF COMPLAINT

On 11/16/04, Ms. Josephine Marsella, Principal, PS 212K, contacted the Office of the Special Commissioner of Investigation and reported that Parent A contacted her and stated that she is not sending Student A, Male, DOB 04/10/04, to school because on 10/26/04, Mr. Storman approached Student A, and brushed a rolled up piece of paper against his lips. Parent A stated that Student A believes that Mr. Storman was acting out a sexual fantasy. OSCI referred case # 2004-2557 to OSI for investigation.

### BACKGROUND

1. A search of the OSI database disclosed that Mr. Storman has one prior case for harassment, Case # 01-0774, which was unsubstantiated. He has no prior CPU, OIG or OPI cases.
2. Technician Lawrence, BCI, NYPD, advised that Mr. Storman does not have a criminal history.

### RESULTS OF INVESTIGATION

On 12/14/04, Investigator Dennis Boyles responded to PS 212K. **Ms. Josephine Marsella, Principal, File # 455034,** was interviewed. She stated that on 11/16/04, that Parent A (father) called her and stated that he is not sending Student A, Male, DOB 04/10/04, to school because on 10/26/04, Mr. Storman approached Student A and brushed a rolled up piece of paper against his lips. Student A believes that Mr. Storman was acting out a sexual fantasy. Parent A indicated that he believed that Mr. Storman was "getting off" when he did this. Ms. Marcella further stated that when she spoke to Student A, he indicated that he was being disrespectful to a substitute teacher when Mr. Storman

---

**EXHIBIT D: OSI Report**        **D-2**

entered the classroom. She spoke to Mr. Storman who prepared a written statement regarding the incident in which he made an admission to touching Student A's mouth with a piece of paper, in an effort to quiet him. Ms. Marsella contacted the Office of the Special Commissioner of Investigation and reported the incident. Ms. Marcella further stated that on 11/16/04, Student A's class had a substitute teacher and Mr. Storman was responding to the class to pick up another student that he services. Ms. Marsella further stated that all the students in the class are Special Education, learning disabled. Student A was not present the day OSI visited.

The following Students were selected randomly and were interviewed in the presence of Ms. Marcella.

**Student B, Male, DOB 07/18/93**, was interviewed and stated that on 11/16/04, Ms. Massad was a substitute teacher and was teaching his class. Student A was talking and when Ms. Massad told him to be quiet, Student A was disrespectful and was cursing at her. Mr. Storman came into the room and told Student A to be quiet and not to curse. He did not see Mr. Storman touch Student A with a piece of paper.

**Student C, Male, DOB 09/24/93**, was interviewed and stated that he had no knowledge of the incident.

**Student D, Female, DOB 09/30/93**, was interviewed and stated she does not remember the incident.

**Student E, Female, DOB 07/28/93**, was interview and stated she does not remember the incident.

**Student F, Male, DOB 10/03/93**, was interviewed and stated he does not remember the incident.

**Student G, Male, DOB 07/07/93**, was interviewed and stated he does not remember the incident.

**Student H, Male, DOB 01/21/92**, was interviewed and stated that on 11/16/04, Ms. Massad was a substitute teacher and was teaching his class. Student A was talking and when Ms. Massad told him to be quiet. Student A then spoke to Ms. Massad in a disrespectful manner and he cursed at her. Mr. Storman came into the room and told Student A to be quiet and not to curse. He did not see Mr. Storman touch Student A with a piece of paper. He further stated that he had a conversation with Student A in which Student A said he was going to get Mr. Storman in trouble.

**Student I, Male, DOB 03/15/93**, was interviewed and stated that on 11/16/04, Ms. Massad was a substitute teacher and was teaching his class. Student A was talking and when Ms. Massad told him to be quiet, Student A was disrespectful and was cursing at Ms. Massad. He did not see Mr. Storman do anything inappropriate to Student A.

2

**EXHIBIT D: OSI Report**          **D-3**

On 12/15/04, **Student A, Male, DOB 04/10/94,** was interviewed in the presence of his father and Assistant Principal, Deborah Dellcomo. Student A admitted that on 11/16/04, he was talking in class and was disrespectful. Mr. Storman came into the class and approached him and brushed a piece of paper on his lips and told him to be quiet. Student A further stated that he does not believe that Mr. Storman's actions were sexual in nature. Student A, when questioned, stated that Mr. Storman did not hurt him, but that he was embarrassed at the time of the incident.

On 12/16/04, **Mr. Glen Storman, File # 478435,** was present at OSI with Mr. Arthur Solomon, UFT Representative. This investigator advised him of the allegation made by Student A. Mr. Storman stated that he went to Student A's class to pick up a student that he services. The class had a substitute teacher. Student A was talking in a disrespectful manner to the teacher and was cursing. He approached Student A and he was holding a rolled up piece of paper in his hand. He might have brushed the piece of paper against Student A's lips and told him to be quiet. Mr. Storman denied that his actions were sexual in any way. Mr. Storman further stated that in retrospect he should not have touched Student A with the piece of paper.

## CONCLUSION

The allegation that Mr. Glen Storman placed a rolled up piece of paper into the mouth of Student A in a sexual manner is unsubstantiated. However, that Mr. Storman should not have made physical contact with Student A when he was reprimanding him.

## RECOMMENDATIONS

It is recommended that a copy of this report be forwarded to the Ms. Josephine Marcella, Principal, PS 212K, for whatever disciplinary action she deems appropriate.

SUBMITTED BY:

Dennis Boyles
Investigator

APPROVED BY:

for /Thomas W. Hyland
Deputy Director

3

1
2
3
4
5
6
7                           HEARING
8
9               OFFICE OF REVIEW AND APPEALS
10
11              DEPARTMENT OF EDUCATION
12              65 COURT STREET, ROOM 717
13                BROOKLYN, NEW YORK
14
15                    MAY 23, 2006
16
17
18        ┌─────────────────────────────┐
          │   *EXTRACT OF TRANSCRIPT*    │
          └─────────────────────────────┘
19
20
21
22
23
24              **Angie DePompo**
          **Court Reporting Service**
                686 Kensico Street
          Staten Island, New York 10306
25                (718) 667-9484

38

1   teeth.

2       Now, when you stated, we're going

3   back to the -- however, that Mr. Storman

4   should not have made physical contact with

5   Student A when he was reprimanding him.

6   Now, did you ever --

7       (Whereupon, the Side A of the tape

8   ended.)

9       Now, are you aware that the

10  regulation of corporal -- well, first of

11  all, do you feel that the statement that

12  was made by Thomas Hylan, when he

13  communicated this to Ms. Josephine

14  Marcella, he well-substantiated.

15      Now, according to your belief, do you

16  believe that corporal punishment had taken

17  place at all?

18      MR. BOYLES:   No, that's a boiler

19  plate letter.  I believe that

20  inappropriate physical contact was made.

21  Corporal punishment and inappropriate

22  physical contact sometimes are two

23  different things, okay.  If, you know, if

24  a teacher hauls off and smacks the kid in

39

the face, I mean, that's corporal
punishment, as opposed to inappropriate
physical contact. I didn't feel that this
rose to the level or corporal punishment.
I felt that it rose to the level of
inappropriate physical contact, and I
recommended that the case be forwarded to
Ms. Marcella for whatever disciplinary
actions she deemed appropriate.

    MR. GROSSMAN:  Let me go back to Ms.
Marcella.

    Ms. Marcella, --

    MS. MARCELLA:  Yes.

    MR. GROSSMAN:   -- when you received
document 2.0 from Thomas Hylan and then
saw the "x" mark that substantiated, did
you believe that the corporal punishment
was substantiated?

    MS. MARCELLA:  Yes.

    MR. GROSSMAN:  Okay, but, however,
you just heard Mr. Boyles indicating that
he did not believe it was corporal
punishment, but, however, it was just
touching.

39

the face, I mean, that's corporal

punishment, as opposed to inappropriate

physical contact.  I didn't feel that this

rose to the level or corporal punishment.

I felt that it rose to the level of

inappropriate physical contact, and I

recommended that the case be forwarded to

Ms. Marcella for whatever disciplinary

actions she deemed appropriate.

    MR. GROSSMAN:   Let me go back to Ms.

Marcella.

        Ms. Marcella, --

        MS. MARCELLA:   Yes.

        MR. GROSSMAN:    -- when you received

document 2.0 from Thomas Hylan and then

saw the "x" mark that substantiated, did

you believe that the corporal punishment

was substantiated?

        MS. MARCELLA:   Yes.

        MR. GROSSMAN:   Okay, but, however,

you just heard Mr. Boyles indicating that

he did not believe it was corporal

punishment, but, however, it was just

touching.

49

1

2       this to Mr. Boyles when he was questioning

3       you?

4           MR. STORMAN:   Yes.

5           MR. GROSSMAN:   And do you feel that

6       what he wrote, what he paraphrased what

7       you had said was taken out of context?

8           MR. STORMAN:   Yes, it was.

9           MR. GROSSMAN:   What you are saying

10      right here is the absolute truth --

11          MR. STORMAN:   Absolute truth.

12          MR. GROSSMAN:   -- of what occurred?

13          MR. STORMAN:   Correct.

14          MR. GROSSMAN:   Beyond this, I'm

15      going to -- I have a document which was

16      written by Arthur Solomon (phonetic), he

17      is a UFT representative, who had

18      accompanied Mr. Storman at the interview

19      with Mr. Boyles, and I'll read to you what

20      he printed that he signed his name, UFT

21      representative.  To whom it may concern,

22      on December 16th, 2004, I accompanied Mr.

23      Glenn Storman at the OSI.  The last

24      statement, paraphrasing Mr. Storman

25      regretting touching Student A, was taken

Angie DePompo Court Reporting Service
(718) 667-9484

50

out of context.  He said that he may have

moved towards him, and if he touched him

with the paper in his hand, it was

accidental.

So, this is from --

VOICE:    (Inaudible) document

MR. GROSSMAN:    That will be document

1.

Now, I also had the regulation of the

Chancellor, which is A420.  So, even if

Mr. Storman had accidentally touched the

child, the student on the lips, it says

very clearly that corporal punishment

shall not mean the use of reasonable

physical force for any of the following

purposes, and the one that would fit Mr.

Storman would be to protect another pupil

or teacher or any other person from

physical injury, and Mr. Storman felt that

this was escalating into something that

could have been violent because other

students were seeing that this student was

getting away with harassing and cursing at

another teacher.  So, therefore, he did

Angie DePompo Court Reporting Service
E-50          (718) 667-9484

Exhibit B

**SUPREME COURT OF THE STATE OF NEW YORK**
**NEW YORK COUNTY**

-----------------------------------------------------------------X

In the Matter of

GLENN STORMAN

                 Petitioner,

          -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

              Respondent.

-----------------------------------------------------------------X

| Petition filed |
| December 11, 2006 |

Index No. _06 - 11 6 337_

**NOTICE OF PETITION**

Please Take Notice, that upon the annexed Verified Petition of GLENN STORMAN, verified on December 10, 2006, and the Exhibits annexed thereto, the Annexed Affidavit of Petitioner sworn December 7, 2006 and upon all papers and proceedings heretofore had herein, an application will be made to Room 130, Submissions Part of this court to be held at the courthouse thereof, located at 60 Centre Street, New York, NY on January 10, 2007 at 9:30 o'clock in the forenoon of that day, or as soon thereafter as counsel can be heard, for an order and judgment pursuant to Article 78 of the Civil Practice Law and Rules:

(1) reversing the decision of the Commissioner of Education, dated the August 14, 2006 which dismissed petitioner's appeal;

(2) quashing, vacating and expunging his 2005 Annual Review in that it rated him "Q" and recited that Petitioner has been guilty of substantiated corporal punishment;

(3) directing that an annual review be issued for 2005 with an "S" rating;

(4) awarding Petitioner the sum of $23,000 for lost wages s for the year 2005 and adjusting his retirement benefits to reflect that payment;

(5) restoring all lost retention rights and directing that he be considered for all extra assignments including summer school on the basis of his seniority and

experience excluding any consideration of the alleged incident of corporal punishments; and

(6) Such other, further, and different relief as may be just and proper, together with the costs and disbursements of this proceeding.

Please Take Further Notice that pursuant to Section 7804 of the Civil Practice Law and Rules you are directed to file with the clerk of the Court your Answer, and answering affidavits, etc., together with the entire official file containing the records of the petitioner herein held by the respondents.

Please Take Further Notice that in accordance with Section 7804 of the Civil Practice Law and Rules you are required to serve upon the undersigned, on or before the 5th day of January, 2007, your answering affidavits and accompanying papers, if any, and upon your failure to do so, application will be made upon the return day for the relief prayed for in the petition, as provided in Section 7804(e) of the Civil Practice Law and Rules.

Dated: New York, New York
      December 11, 2006

                            **JOHN C. KLOTZ**
                          Attorney for Petitioner
                   350 Fifth Avenue, Suite 4810
                   New York, New York 10118
                       (212) 630-2600

TO:    THE DEPARTMENT OF EDUCATION
        OF THE CITY OF NEW YORK
        52 Chambers St.
        New York, NY 10007

        CORPORATION COUNSEL
        OF CITY OF NEW YORK
        100 Church Street
        New York, NY 10007

**SUPREME COURT OF THE STATE OF NEW YORK**
**NEW YORK COUNTY**

**Petition Filed:**
**December 11, 2006**

------------------------------------------------------------------------X

In the Matter of

GLENN STORMAN

             Petitioner,

          -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

           Respondent.

------------------------------------------------------------------------X

Index No. 06 - 116337

**VERIFIED PETITION**

Petitioner GLENN STORMAN, for his Verified Petition, alleges:

### (a) Introduction

*1.*     This proceeding brought pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR") to review a determination of the Chancellor of the Department of Education that an "unqualified" rating Petitioner received was justified because Petitioner was guilty of "a substantiated incidence of corporal punishment."

*2.*     The affidavit of the Petitioner sworn December 7, 2006 is submitted herewith. Annexed hereto as Exhibit A is the Annual Professional Performance Review ("Annual Review") and Exhibit B, the decision of the Chancellor's designee denied the appeal and sustained the rating "as a consequence of a substantiated incident of corporal punishment."

*3.*     As a matter of fact and law, said finding of a "substantiated incident of corporal punishment" was not substantiated for there was no evidence at any point in the process that an incident of corporal punishment occurred.

### _(b)  Applicable Regulation_

4.      Annexed to this Petition as Exhibit C is a copy of Regulation A-420 of the Chancellor. In pertinent part it defines Corporal Punishment as:

"2. Definitions:

"Regulations of the Commissioner §100.2(I)(3)(i) define corporal punishment as <u>any act of physical force upon a pupil for the purpose of punishing that pupil</u>. Such term shall not mean the use of reasonable physical force for any of the following purposes:

"1. to protect oneself from physical injury;

"2. to protect another pupil or teacher or any other person from physical injury (e.g. breaking up a physical altercation without using excessive force);

"3. to protect the property of the school or of others; or

"4. to restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district functions, powers or duties, if that pupil has refused to comply with a request to refrain from further disruptive acts, provided that alternative procedures and methods not involving the use of physical force cannot be reasonably employed to achieve the purposes set forth in 1 through 3 above." (Emphasis supplied) Exhibit C: Regulation of the Chancellor, A-420, p. 1

5.      The evidence before both the Principal who executed Exhibit A and the Chancellor's representative who signed Exhibit B does not support a determination of Corporal Punishment in that there was no evidence of any kind that Petitioner committed an act of physical force for the purpose of punishing any pupil.

6.      The actions Petitioner took, which did not involve the use of physical force, were, in fact, intended to calm a situation where a teacher and her class were being disrupted by the acts of a student.

### _(c)  Facts of controversy_

7.      For over 25 years Petitioner has been employed by the New York City Board of Education and for the last 16 years he has been employed as a guidance counselor. During this time, Petitioner has enjoyed an excellent reputation having earned the high regard of parents, students, his teaching colleagues and supervisors.

8.    On October 26, 2004, Petitioner entered a classroom to obtain information about a student's attendance (Student X). In his hand, he had a rolled-up piece of paper concerning the attendance of Student X..

9.    As he entered the classroom, Petitioner became aware of a tumult in the classroom. A student ("Student A") was kneeling on a chair, cursing out a female substitute teacher and disrupting the class. He approached the Student A, and gesturing with the hand in which he had the piece of paper, told Student A to "Zip it."

10.    Whereupon Student A, sat down and ceased his disruptive behavior.

11.    Petitioner did not touch Student A. In the alternative, if the paper in his hand touched Student A, it was entirely accidental and unintentional. No one in the room observed Student A touched by the paper and Petitioner does not believe it happened. Such accidental touching, if it occurred, was slight and caused absolutely no harm or damage or injury of any kind to Student A.

12.    Petitioner regarded the incident as closed as he had accomplished his objective which was to help the substitute teacher restore order.

13.    On information and belief, a few days later, the father of Student A was contacted by the principal of the school because of Student A's truancy. The father then claimed hat Student A had been sexually assaulted by Petitioner because he had inserted a piece of paper in Student A's mouth for the purpose of obtaining sexual pleasure.

14.    That charge of inappropriate touching for sexual gratification was preposterous then and remains preposterous to this day.

15.    On November 16, 2004, the father of the child met with the principal of the school and repeated the charge.

16.    On information and belief, Student A's father had vigorously lobbied Petitioner's supervisors to take strong action against Petitioner and implicitly threatened legal action.

17.    Thereafter an investigation was initiated by the Chancellor's Office of Special Investigations ("OSI") which reported a substantiated incident of corporal punishment. A copy of that report is annexed hereto as Exhibit D.

18.     The investigating officer for OSI interviewed 9 students who witnessed the incident, including Student A. None of the student witnesses, except Student A, saw any touching of Student A by Petitioner. They did confirm Student A's disruptive behavior. Student A dropped any claim that there was a sexual connotation to the incident. He was not in fact physically harmed, but stated he was "embarrassed."

19.     Student H stated to the OSI investigator that Student A had told him that he would "get Mr. Storman." (Exhibit D, p. D-3)

20.     No where in the report does state the cause of the embarrassment claimed by Student A and as a matter of fact, Petitioner believes if there was any embarrassment, it was caused by Petitioner telling Student A to stop his disruptive behavior rather than any alleged, accidental physical conduct.

21.     On information and belief, the investigating officer did not interview the substitute teacher who was in the classroom.

22.     According the Report, Ms. Marcella stated that Petitioner prepared a written statement that in which he made an admission that he had touched Student A's mouth with a piece of paper in an effort to quiet him. Petitioner denies ever making such an admission and no such written statement is a part of this record.

23.     The investigating officer later interviewed Petitioner. No recording or transcript of the of the interview was made. A representative of the United Federation of Teachers (UFT), Petitioner's union was present.

24.     According to the OSI report:

> "Mr. Storman stated that he went to Student A's class to pick up a student that he services. The class had a substitute teacher. Student A was talking in a disrespectful manner to the teacher and was cursing. He approached Student A and he was holding a rolled up piece of paper in his hand. He might have brushed the piece of paper against Student A's lips and told him to be quiet. Mr. Storman denied that his actions were sexual in any way. Mr. Storman further stated that in retrospect he should not have touched Student A with the piece of paper."

25.     Petitioner denies stating to the investigating officer that he might have brushed the piece of paper against Student A's lips.

26.    The report concluded that:

"The allegation that Mr. Glen Storman placed a rolled up piece of paper into the mouth of Student A in a sexual manner is unsubstantiated. However, that Mr. Storman should not have made physical contact with Student A when he was reprimanding him."

27.    The Report of the investigation was forwarded to Petitioner's supervising principal, Ms. Josephine Marcella with the following notation:

"The Chancellor's Office of Special Investigations has completed its investigation into the allegations of corporal punishment against Mr. Glen STorman [sic], [Social Security Number deleted] Based on information and facts gained during the investigation, it has been determined that this matter is:

"SUBSTANTIATED:       | X |
"UNSUBSTANTIATED:"    |   |

(Exhibit D, p. D-1)

28.    The contents of said Report did not substantiate allegations of corporal punishment against Petitioner. (See Report, Exhibit D, pp. D-2 to D-4)

29.    On being advised the findings of the Report, Mr. Solomon, the UFT representative who was present, issued the following statement:

"The last statement, paraphrasing Mr. Storman regretting touching Student A, was taken out of context. He said that he may have moved towards him, and if he touched him with the paper in his hand, it was accidental." (See Ex. E, Transcript, pp. 49-50)

30.    Thereafter, in June, 2005, the Exhibit A was issued judging Mr. Storman "U" [unsatisfactory] on account of "Substantiated Corporal punishment at P.S. 212" (Exhibit A)

31.    In violation of DOE policy, the Review was not provided Petitioner in a timely manner. Thereafter, Petitioner appealed his rating.

32.    A hearing was held on his appeal on May 23, 2006. The transcript of that proceeding is annexed as Exhibit E.

33.    A determination issued on August 14, 2006 denying Petitioner's Appeal and sustaining his "U" rating on "as a consequence of a substantiated incident of corporal

punishment." (See Exhibit B)

34.    A timely Notice of Claim was served upon the Department of Education, the New York City Comptroller and the New York City Corporation Counsel on November 8, 2006. No response has been received and more than 30 days have elapsed.

35.    The determination that there was a "substantiated incidence of corporal punishment" is devoid of any legal or factual basis.

### (d) Injustice and damage to the Petitioner

36.    The finding that Petitioner has been guilty of an incidence of corporal punishment is gravely damaging to Petitioner both financially and professionally.

37.    Submitted with this Verified Petition is an affidavit of Petitioner, worn December 7, 2006.

38.    Until the finding of substantiated corporal punishment, Petitioner had enjoyed an unblemished reputation as an able capable professional. Now, he will be forever marked by this finding and it will be a hindrance to him both as an employee of the DOE and in seeking employment in any other place.

39.    In addition, Petitioner has lost his retention right to earn extra income from the DOE both as a Summer School teacher and Per Session Home Instructor.

40.    The reduction of income from his loss of Summer School teaching and Per Session Home Instructor will be compounded for decades because it will reduce his income against which his pension will be calculated.

41.    That by reason of the foregoing, Petitioner has lost financial benefits for the year 2005 in the sum of $23,000 and will lose financial benefits in excess of $500,000 in future years, including a reduction of reasonably anticipated pension benefits..

WHEREFORE, Petitioner prays that Court enter Judgment (1) reversing the decision of the Commissioner of Education, dated the August 14, 2006 which dismissed petitioner's appeal, (2) quashing, vacating and expunging his 2005 Annual Review in that it rated him "Q" and recited that Petitioner has been guilty of substantiated corporal punishment; (3) directing that an annual review be issued for 2005 with an "S" rating; (4) awarding Petitioner the sum of $23,000

for lost annual benefits for the year 2005 and adjusting his retirement benefits to reflect that payment; (5) directing that he be considered for all extra assignments including summer school on the basis of his seniority and experience excluding any consideration of the alleged incident of corporal punishments and (6) such other, further, and different relief as may be just and proper, together with the costs and disbursements of this proceeding.

Dated: New York, New York
      December 10, 2006

**JOHN C. KLOTZ**
Attorney for Petitioner
350 Fifth Avenue, Suite 4810
New York, New York 10118
(212) 630-2600

*Matter of Storman: Petition*                                                                 *Page 7*

VERIFICATION

JOHN C. KLOTZ an attorney admitted to practice before the courts of the State of New York affirms the truth of the following statement under penalties of perjury:

I am the attorney for the Petitioner herein and have read the Verified Petition herein. The same is true upon my information and belief, the sources of my information being my investigation of the facts and papers in my file.

The reason this verification is made by me and not by my client is that my client is not present on the County of New York, the county in which I maintain my office for the practice of law.

Dated: New York, New York
       December 10, 2006

_____
                    JOHN C. KLOTZ

*Matter of Storman: Petition*                                    *Page 8*

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
------------------------------------------------------------------X

GLENN STORMAN
                    Petitioner,

              -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                    Respondent.

------------------------------------------------------------------X

Index No.

AFFIDAVIT IN SUPPORT
OF PETITION

STATE OF NEW YORK    )
                        )ss.:
COUNTY OF RICHMOND  )

        GLENN STORMAN, being duly sworn, deposes and says:

      1.     I am the Petitioner herein and I make this affidavit in support of my application to redress the grievous wrong done to me by the respondent New York City Department of Education (the "DOE").

      2.     What has happened to me at the hands of the DOE bureaucracy is living proof of the old adage that "no good deed goes unpunished." The purpose of this affidavit is to explain (a) why I believe my actions of October 26 were a "good deed" and (2) what the punishment means to me both personally and professionally and perhaps to urban teachers in an urban school as a whole.

    1.  The Good deed

      3.     On October 26, 2004, I needed some information from a Teacher's Assistant concerning a student's attendance and went to the classroom where the student attended. In my hand was a rolled-up paper concerning that student who in no ways was involved in the incident that followed.

      4.     As I entered the classroom, I observed that it was in some disorder. One

student – Student A – was kneeling on his chair – cursing at the teacher who happened to be a substitute. I went up to the student and told him to "Zip it." He did and he sat back down and order was restored.

5.    I do not believe that I touched the student in anyway with the paper. He had started to rise when I approached and in rising leaned toward me. If there was any contact with the paper in my hand, it was totally accidental and was not seen by anyone else in the room.

6.    What I did not realize at the time, was that my act of helping a substitute teacher restore order by simply telling a disruptive student to be quiet would start a process that has stained my professional credentials and besmirched my reputation; has cost me thousands of dollars already through lost extra-income employment opportunities I routinely received and accepted from the DOE and threatens to cost me hundreds of thousands of dollars of lost pension benefits as well as continued lost opportunities.

7.    I heard nothing further of the event for several weeks when I was informed that I was being investigated for sexual misconduct because I had sought sexual gratification by pushing a piece of paper into Student A's mouth.

8.    That charge, which was not sustained, was so ov r the top as to be totally absurd, but by making it, Student A triggered an investigation by the DOE's Office of Special Investigations ("OSI"). Among the information obtained in that investigation was a boast made to Student H by Student A that he would "get Mr. Storman." (Exhibit C OSI Report, p. C-3) With a little help from the DOE bureaucracy, that's precisely what he has done.

9.    I had an interview with the OSI investigator, Mr. Boyles in the company of a union representative. Mr. Boyles indicated to me that the worst that could happen was a letter in my file and he tried to make me admit that I had put a rolled up paper into the boy's mouth. I denied that emphatically but after persistent badgering, I stated that if I touched Student A with the papers it was accidental. I spoke in the hypothetical because I do not remember the paper touching him and do not believe that it did.

10.    Significantly, in the investigative report of Mr. Boyles, he reported ten

interviews of individuals in the room at the time (nine students and myself). Only Student A  reported contact with the piece of paper in my hand. He never interviewed, or made any attempt to interview, the substitute teacher.

11.     Ms. Marcella  told me, that the father had repeatedly called her and threatened "to take this to highest of the Department of Education and further." He would not be not satisfied with her simply putting a letter in my file.

12.     Student A's father was well known to many in the special education department. He was regarded neglectful of his child and abusive to any one who tried to help the child over come his problems.

13.     Nonetheless, the investigation by OSI resulted in a finding substantiated allegations of corporal punishment against me and referred this matter to Ms. Marcella, supervising principal.

14.     Ms. Marcella, the Supervising Principal rated me "U" for unsatisfactory on the basis of "Substantiated Corporal Punishment at PS 212." and Mr. Carl Santamaria executed the review form as Principal of PS 212. (See Ex. A)

15.     At the DOE hearing, both the OSI Investigator and Ms. Marcella conceded that the facts did not rise to the level of corporal punishment (Transcript, p. 39-40). Ms. Marcella maintained that she gave me the unsatisfactory rating because the student should not have been "embarrassed." (ibid)

16.     There is no issue but that Student A was properly subject to a reprimand. I do not believe that I touched Student A with the paper and no one other than Student A claims it happened although eight other witnesses were interviewed and none saw any contact. (See Ex. D, the OSI Report)

17.     Student A's embarrassment was not caused by any accidental brush with a piece of paper but by being told in front of his peers to "Zip it." No one claims that was improper. Ms. Marcela's concern for the student's embarrassment at being reprimanded is misplaced. No where does she express any concern for the substitute teacher who was losing control of her class because of Student A's conduct.

18.     Because this student was embarrassed by my reprimand, I am now facing

the loss of thousands of dollars of income and blackened reputation as an inflictor of corporal punishment.

19.     Corporal punishment is defined as "any act of physical force upon a pupil for the purpose of punishing that pupil". (See Ex. C, Chancellor's Regulation A-420, par. 2) Embarrassing a disorderly student by telling him to be quiet is not corporal punishment. Neither is unintended, incidental contact. It must be an intentional act of physical force for express purpose of punishing the student. Nothing in this record shows that I exerted physical force on Student A for the purpose of punishing him.

## 2.  Loss of Retention Rights

20.     While I am able to continue my regular function as a Guidance Counselor for emotional disturbed children and have not lost seniority, the Unsatisfactory rating denied me "retention rights" for extra assignments last year both in Summer School and as a "per session" Home Instruction Teacher.

21.     The Home Instruction Program provides instruction in the home for students who are unable to come to school for instruction. There are permanent home instructors employed by the DOE, but "per session" instructors fill in the gaps. I have been doing home instruction assignments since 1990.

22.     Under the terms of the UFT contract with the DOE, individuals doing per session home instructions (and summer school) are entitled to retain positions through continuous service. Because of my long service as both a "per session" home instructor and summer school teacher, I had retention rights superior to almost all other teachers on Staten Island and could be assured of these opportunities to teach.

23.     However, because of the "U" rating, I lost my retention rights and was not qualified for either assignment in 2005-2006 school year and lost $23,000 in income: $6,000 for summer school and assignment and $17,000 for per session home instruction.

24.     It will never reacquire the same retention rights I enjoyed before my "U" rating.

25.     The denial of this source of income to me is compounded when my pension benefits and rights are considered. By dramatically reducing my income, my

prospective pension is therefore reduced. Depending on when I actual retire, I will lose as much as $500,000 in pension payments.

26.    All of this, because I assisted a substitution teacher in need.

### 3.   Chilling effect and bureaucratic cowardice

27.    I make no claim to being a brave man. I am simply a person who has dedicated my life to counseling and teaching children in an urban school with a difficult student population. I am proud of my profession. When I sought to help a substitute teacher gain control of her class, I thought I was acting in the best interests of everybody: the teacher, the students other than Student A who were being denied their education by Student A's antics, and, ultimately Student A, himself. It would have been wrong for me not to intervene.

28.    What will be the effect of my draconian punishment be on my colleagues? Will it be a warning to mind their own business? To let other colleagues twist in the wind, because to come to their assistance is a career threatening move? Will it be a warning, that no matter how well intentioned you may be, a cowardly bureaucracy will throw you to the wolves, rather that deal with you by dispensing simple justice?

29.    The bureaucracy of the DOE has not given me simple justice but inflicted grave harm on my career.

30.    Justice, if it is to come, must come from this court.

GLENN STORMAN

Sworn to and subscribed before me,

this __7__ day of December, 2006

NOTARY PUBLIC

LAURA DOBRKEN LAURIA
NOTARY PUBLIC
City of New York #43-4698134
Certificate Filed in Richmond Co.
Commission Expires Feb. 28, 2010.

## CERTIFICATION OF SERVICE

I, Daniel Chiu, hereby certify that:

On August 16, 2007, I served the annexed Declaration in Support of Defendant's Motion to Dismiss by depositing a true and correct copy, into the custody of United States Postal Service, in an enclosed envelope with sufficient postage for first-class mail addressed to:

> John C. Klotz, Esq.
> Attorney for Plaintiff
> 350 Fifth Avenue, Suite 4810
> New York, New York 10118

I certify under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      August 16, 2007

 

                                        Daniel Chiu