JOHN C. KLOTZ (JK 4162)
The Empire State Building
350 Fifth Avenue, Suite 4810
New York, New York 10118-4810
(212) 630-2600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
:
GLENN STORMAN                                          :    Index No. 07-CV-5797 (SHS)
:
                                        Plaintiff,     :    **AMENDED COMPLAINT**
:
          -against-                                    :    **PLAINTIFF DEMANDS**
:    **TRIAL BY JURY**
NEW YORK CITY DEPARTMENT OF EDUCATION,                 :
:
                                        Defendant.     :
:
-----------------------------------------------------------------------X

    Plaintiff GLENN STORMAN, for his Amended Complaint, alleges:

*1. Jurisdiction and venue*

    1.    This is an action pursuant to Title 42 of the United States Code, Section 1983 to redress the denial to Plaintiff by Defendant of protected liberty interests and rights without due process of law.

    2.    Jurisdiction is based upon the provisions 42 U.S.C. § 1983

    3.    Venue is based upon the location of defendant's principal office in the City, County and State of New York, within the Southern District.

*2. Parties*

    4.    Plaintiff is a resident of the City of New York, County of Richmond and State of New York.

    5.    Defendant New York City Department of Education (NYC DOE) is an agency of

the New York City government having its principal office at 52 Chambers Street in the City, County and State of New York.

### 3. Color of State Law

6.      The Chief Executive of the NYC DOE is the Chancellor who executes the policies of the NYS DOE pursuant to the provisions of the N.Y.S. Education Law, the City Charter and the Rules and Regulations of the NYC DOE.

7.      At all pertinent times, the Chancellor and the various other employees of the NYC DOE whose actions are described herein were acting in accordance with the scope of their employment by the NYC DOE under color of law by reason of grants authority from New York State and New York City.

### 4. Protected liberty interests at risk

8.      For over 25 years Plaintiff has been employed by the New York City Board of Education and for the last 16 years he has been employed as a guidance counselor. During this time, Plaintiff has enjoyed an excellent reputation having earned the high regard of parents, students, his teaching colleagues and supervisors.

9.      Plaintiff's tenure rights are vested in him by reason of the provisions of the New York Sate Education Law, the contract between Defendant and the his union, the United Federation of Teachers ("UFT") and rules, regulations and procedures promulgated by the defendant pursuant to its governmental power.

10.     Among the rights and privileges afforded Plaintiff by the UFT Contract are "retention rights" which allows him to obtain and retain extra-assignments including assignment as a summer school teacher and as a Home Instructor pursuant to the Defendant's Home Instruction Program.

11.     Plaintiff's vested rights of retention and his ability to pursue professional opportunities afforded him by his experience and previously unblemished reputation are all integral parts of his liberty that is protected by the United States Constitution.

12.     Annexed hereto as Exhibit A is the Annual Professional Performance Review ("Annual Review") that rated Plaintiff "U" for Unsatisfactory. and Exhibit B, the decision of the

Chancellor's designee denied the appeal and sustained the rating "as a consequence of a substantiated incident of corporal punishment."

13. As a matter of fact and law, said finding of a "substantiated incident of corporal punishment" was not substantiated for there was no evidence at any point in the process that an incident of corporal punishment occurred.

*Applicable Regulation*

14. Annexed to this Complaint as Exhibit C is a copy of Regulation A-420 of the Chancellor. In pertinent part it defines Corporal Punishment as:

> "2. Definitions:
>
> "Regulations of the Commissioner §100.2(I)(3)(i) define corporal punishment as <u>any act of physical force upon a pupil for the purpose of punishing that pupil</u>. Such term shall not mean the use of reasonable physical force for any of the following purposes:
>
> "1. to protect oneself from physical injury;
>
> "2. to protect another pupil or teacher or any other person from physical injury (e.g. breaking up a physical altercation without using excessive force);
>
> "3. to protect the property of the school or of others; or
>
> "4. to restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district functions, powers or duties, if that pupil has refused to comply with a request to refrain from further disruptive acts, provided that alternative procedures and methods not involving the use of physical force cannot be reasonably employed to achieve the purposes set forth in 1 through 3 above." (Emphasis supplied) Exhibit C: Regulation of the Chancellor, A-420, p. 1

15. The evidence before both the Principal who executed Exhibit A and the Chancellor's representative who signed Exhibit B does not support a determination of Corporal Punishment in that there was no evidence of any kind that Plaintiff committed an act of physical force for the purpose of punishing any pupil.

16. The actions Plaintiff took, which did not involve the use of physical force, were, in fact, intended to calm a situation where a teacher and her class were being disrupted by the acts of a student.

17.    October 26, 2004, Plaintiff entered a classroom to obtain information about a student's attendance (Student X). In his hand, he had a rolled-up piece of paper concerning the attendance of Student X..

18.    As he entered the classroom, Plaintiff became aware of a tumult in the classroom. A student ("Student A") was kneeling on a chair, cursing out a female substitute teacher and disrupting the class. He approached the Student A, and gesturing with the hand in which he had the piece of paper, told Student A to "Zip it."

19.    Whereupon Student A, sat down and ceased his disruptive behavior.

20.    Plaintiff did not touch Student A. In the alternative, if the paper in his hand touched Student A, it was entirely accidental and unintentional. No one in the room observed Student A touched by the paper and Plaintiff does not believe it happened. Such accidental touching, if it occurred, was slight and caused absolutely no harm or damage or injury of any kind to Student A.

21.    Plaintiff regarded the incident as closed as he had accomplished his objective which was to help the substitute teacher restore order.

22.    A few days later, the father of Student A was contacted by the principal of the school because of Student A's truancy. The father then claimed that Student A had been sexually assaulted by Plaintiff because he had inserted a piece of paper in Student A's mouth for the purpose of obtaining sexual pleasure.

23.    That charge of inappropriate touching for sexual gratification was preposterous then and remains preposterous to this day.

24.    On November 16, 2004, the father of the child met with the principal of the school and repeated the charge.

25.    Likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Student A's father vigorously lobbied Plaintiff's supervisors to take strong action against Plaintiff and implicitly threatened legal action.

26.    Thereafter an investigation was initiated by the Chancellor's Office of Special Investigations ("OSI") which reported a substantiated incident of corporal punishment. A copy of that report is annexed hereto as Exhibit D.

27. The investigating officer for OSI interviewed 9 students who witnessed the incident, including Student A. None of the student witnesses, except Student A, saw any touching of Student A by Plaintiff. They did confirm Student A's disruptive behavior. Student A dropped any claim that there was a sexual connotation to the incident. He was not in fact physically harmed, but stated he was "embarrassed."

28. Student H stated to the OSI investigator that Student A had told him that he would "get Mr. Storman." (Exhibit D, p. D-3)

29. No where in the report, does it state the cause of the embarrassment claimed by Student A and as a matter of fact, Plaintiff believes if there was any embarrassment, it was caused by Plaintiff telling Student A to stop his disruptive behavior rather than any alleged, accidental physical conduct.

30. Likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, the investigating officer did not interview the substitute teacher who was in the classroom.

31. According the Report, Ms. Marcella stated that Plaintiff prepared a written statement that in which he made an admission that he had touched Student A's mouth with a piece of paper in an effort to quiet him. Plaintiff denies ever making such an admission and no such written statement is a part of this record.

32. The investigating officer later interviewed Plaintiff. No recording or transcript of the of the interview was made. A representative of the United Federation of Teachers (UFT), Plaintiff's union was present.

33. According to the OSI report:

> "Mr. Storman stated that he went to Student A's class to pick up a student that he services. The class had a substitute teacher. Student A was talking in a disrespectful manner to the teacher and was cursing. He approached Student A and he was holding a rolled up piece of paper in his hand. He **might** have brushed the piece of paper against Student A's lips and told him to be quiet. Mr. Storman denied that his actions were sexual in any way. Mr. Storman further stated that in retrospect he should not have touched Student A with the piece of paper." (Emphasis added)

34. Plaintiff denies stating to the investigating officer that he might have brushed the piece of paper against Student A's lips.

35. At no time, was Mr. Storman afforded any opportunity during the investigatory process to confront Student A and question him in regards to his accusations.

36. The report concluded that:

> "The allegation that Mr. Glen Storman placed a rolled up piece of paper into the mouth of Student A in a sexual manner is unsubstantiated. However, that Mr. Storman should not have made physical contact with Student A when he was reprimanding him."

37. The Report of the investigation was forwarded to Plaintiff's supervising principal, Ms. Josephine Marcella with the following notation:

> "The Chancellor's Office of Special Investigations has completed its investigation into the allegations of corporal punishment against Mr. Glen Storman [sic], [Social Security Number deleted] Based on information and facts gained during the investigation, it has been determined that this matter is:
>
> "SUBSTANTIATED:     [X]
> "UNSUBSTANTIATED:"  [ ]

(Exhibit D, p. D-1)

38. The contents of said Report did not substantiate allegations of corporal punishment against Plaintiff. (See Report, Exhibit D, pp. D-2 to D-4)

39. On being advised the findings of the Report, Mr. Solomon, the UFT representative who was present, issued the following statement:

> "The last statement, paraphrasing Mr. Storman regretting touching Student A, was taken out of context. He said that he may have moved towards him, and if he touched him with the paper in his hand, it was accidental." (See Ex. E, Transcript of Hearing, pp. 49-50)

40. Thereafter, in June, 2005, Exhibit A was issued rating Mr. Storman "U" [unsatisfactory] on account of "Substantiated Corporal punishment at P.S. 212" (Exhibit A)

41. In violation of DOE policy, the Review was not provided Plaintiff in a timely

manner. Thereafter, Plaintiff appealed his rating.

42. A hearing was held on his appeal on May 23, 2006. At that hearing both the investigating officer and the Supervising Principal admitted that Mr. Storman's conduct did not constitute corporal punishment. Exhibit E, p. 38-40.

43. IN addition, Mr. Storman's union representative argued that the "U" rating based on the investigatory report was improper because at no time was Mr. Storman afforded the opportunity of confronting his accuser. Transcript, Exhibit E, p. 52-53

44. A determination issued on August 14, 2006 denying Plaintiff's Appeal and sustaining his "U" rating on "as a consequence of a substantiated incident of corporal punishment." (See Exhibit B)

45. A timely Notice of Claim was served upon the Department of Education, the New York City Comptroller and the New York City Corporation Counsel on November 8, 2006. Said matter has not been resolved and no hearing held.

46. The determination that there was a "substantiated incidence of corporal punishment" is devoid of any legal or factual basis, and was based upon a procedure that denied Plaintiff fundamental constitutional rights including the right of confrontation and proof of wrongdoing by substantial evidence.

## 5. *Injustice and damage to the Plaintiff*

47. The finding that Plaintiff has been guilty of an incidence of corporal punishment is gravely damaging to Plaintiff both financially and professionally.

48. Until the finding of substantiated corporal punishment, Plaintiff had enjoyed an unblemished reputation as an able capable professional. Now, he will be forever marked by this finding and it will be a hindrance to him both as an employee of the DOE and in seeking employment in any other place.

49. In addition, Plaintiff has lost his vested retention right to earn income from the DOE both as a Summer School teacher and Per Session Home Instructor.

50. The reduction of income from his loss of Summer School teaching and Per Session Home Instructor will be compounded for decades because it will reduce his income

against which his pension will be calculated.

51. That by reason of the foregoing, Plaintiff has lost financial benefits for the year 2005 in the sum of $23,000 and will lose financial benefits in excess of $1,000,000 in future years, including a reduction of reasonably anticipated pension benefits.

52. Plaintiff performed no Home Schooling instruction and was denied appointment as a summer school teacher in 2007 because of his loss of retention rights.

## 6. *Denial of Due process*

53. The stigma of being found guilty of a "substantiated incident of corporal punishment" damages beyond repair Plaintiff's ability to pursue his chosen profession, in addition to denying him rights vested by the UFT Contract.

54. Said unsatisfactory rating and the reasons for it will be available for inspection by any future employer and within the school system should he be considered for reassignment at anytime.

55. The Fourteenth Amendment of the United States Constitution requires that in cases in which important liberty rights are implicated, that any deprivation of those liberty rights can only occur after notice and hearing and any adverse determination must be supported by a preponderance of the evidence.

56. The determination of the Defendant that the Plaintiff was guilty of a substantiated incident of corporal punishment is arbitrary and capricious.

57. Said determination is not supported by either a preponderance of the evidence or substantial evidence and is, in fact, devoid of any supporting evidence.

58. In addition, Plaintiff was denied the right to confront Student A and cross-examine him about his claims.

## 7. *Claim For Relief*

59. By reason of the premises aforesaid, Defendant acting under color of law has deprived the Plaintiff of his liberty rights and property without due process of law in violation of 42 U.S.C. § 1983.

60. By reason of the premises aforesaid, Plaintiff has been damaged in his property by reason of lost income and reasonably anticipated retirement benefits in the some of $1,000,000.

61. Defendant's actions has caused Plaintiff severe emotional distress and anxiety, caused him to lose sleep and suffer pain and anguish because of the threat to his continued employment and the destruction of his career and reputation.

62. The actions of the defendant damaged Plaintiff's otherwise harmonious relationship with his wife, creating domestic friction, further causing and enhancing his emotional distress.

63. By reason of his emotional distress and damage to his marital relationship, plaintiff has been damaged in sum to be determined but not less than $1,000,000.

64. By reason of the premises aforesaid the Plaintiff is entitled to judgment in the sum of $2,000,000 together with the costs and disbursements of this action including reasonable attorney fees pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiff prays that Court enter Judgment in the sum of $2,000,000 together with the costs and disbursements of this action including reasonable attorney fees.

Dated: New York, New York
September 20, 2007

JOHN C. KLOTZ
Attorney for Plaintiff
350 Fifth Avenue, Suite 4810
New York, New York 10118
(212) 630-2600

TO: MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York
100 Church St., Room 2-170
New York, NY 10007