UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
-------------------------------------------------------------------- x
GLENN STORMAN,

                                    Plaintiff,

               -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                Defendants.

-------------------------------------------------------------------- x

**REPLY DECLARATION IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS** _____

Docket No. 07 CV 5797 (SHS)

    I, DANIEL CHIU, hereby declare that:

    1.     I am an Assistant Corporation Counsel with the office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for defendant New York City Department of Education ("DOE"). I am familiar with the matters set forth below.

    2.     This reply declaration is submitted in further support of Defendant's motion to dismiss the complaint in this action.

    3.     Annexed hereto as Exhibit "A" is a true copy of the Amended Complaint, dated September 20, 2007, filed by plaintiff in this action.

    I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       October 12, 2007

                                       Daniel Chiu

# Exhibit A

JOHN C. KLOTZ (JK 4162)
The Empire State Building
350 Fifth Avenue, Suite 4810
New York, New York 10118-4810
(212) 630-2600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

GLENN STORMAN

                              Plaintiff,

                -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                             Defendant.

------------------------------------------------------------------X

Index No. 07-CV-5797 (SHS)

**AMENDED COMPLAINT**

**PLAINTIFF DEMANDS
TRIAL BY JURY**

Plaintiff GLENN STORMAN, for his Amended Complaint, alleges:

### 1. *Jurisdiction and venue*

1.    This is an action pursuant to Title 42 of the United States Code, Section 1983 to redress the denial to Plaintiff by Defendant of protected liberty interests and rights without due process of law.

2.    Jurisdiction is based upon the provisions 42 U.S.C. § 1983

3.    Venue is based upon the location of defendant's principal office in the City, County and State of New York, within the Southern District.

### 2. *Parties*

4.    Plaintiff is a resident of the City of New York, County of Richmond and State of New York.

5.    Defendant New York City Department of Education (NYC DOE) is an agency of

the New York City government having its principal office at 52 Chambers Street in the City, County and State of New York.

### 3. *Color of State Law*

6.      The Chief Executive of the NYC DOE is the Chancellor who executes the policies of the NYS DOE pursuant to the provisions of the N.Y.S. Education Law, the City Charter and the Rules and Regulations of the NYC DOE.

7.      At all pertinent times, the Chancellor and the various other employees of the NYC DOE whose actions are described herein were acting in accordance with the scope of their employment by the NYC DOE under color of law by reason of grants authority from New York State and New York City.

### 4. *Protected liberty interests at risk*

8.      For over 25 years Plaintiff has been employed by the New York City Board of Education and for the last 16 years he has been employed as a guidance counselor. During this time, Plaintiff has enjoyed an excellent reputation having earned the high regard of parents, students, his teaching colleagues and supervisors.

9.      Plaintiff's tenure rights are vested in him by reason of the provisions of the New York Sate Education Law, the contract between Defendant and the his union, the United Federation of Teachers ("UFT") and rules, regulations and procedures promulgated by the defendant pursuant to its governmental power.

10.      Among the rights and privileges afforded Plaintiff by the UFT Contract are "retention rights" which allows him to obtain and retain extra-assignments including assignment as a summer school teacher and as a Home Instructor pursuant to the Defendant's Home Instruction Program.

11.      Plaintiff's vested rights of retention and his ability to pursue professional opportunities afforded him by his experience and previously unblemished reputation are all integral parts of his liberty that is protected by the United States Constitution.

12.      Annexed hereto as Exhibit A is the Annual Professional Performance Review ("Annual Review") that rated Plaintiff "U" for Unsatisfactory, and Exhibit B, the decision of the

Chancellor's designee denied the appeal and sustained the rating "as a consequence of a substantiated incident of corporal punishment."

13.    As a matter of fact and law, said finding of a "substantiated incident of corporal punishment" was not substantiated for there was no evidence at any point in the process that an incident of corporal punishment occurred.

### *Applicable Regulation*

14.    Annexed to this Complaint as Exhibit C is a copy of Regulation A-420 of the Chancellor. In pertinent part it defines Corporal Punishment as:

"2. Definitions:

"Regulations of the Commissioner §100.2(I)(3)(i) define corporal punishment as any act of physical force upon a pupil for the purpose of punishing that pupil. Such term shall not mean the use of reasonable physical force for any of the following purposes:

"1. to protect oneself from physical injury;

"2. to protect another pupil or teacher or any other person from physical injury (e.g. breaking up a physical altercation without using excessive force);

"3. to protect the property of the school or of others; or

"4. to restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district functions, powers or duties, if that pupil has refused to comply with a request to refrain from further disruptive acts, provided that alternative procedures and methods not involving the use of physical force cannot be reasonably employed to achieve the purposes set forth in 1 through 3 above." (Emphasis supplied) Exhibit C: Regulation of the Chancellor, A-420, p. 1

15.    The evidence before both the Principal who executed Exhibit A and the Chancellor's representative who signed Exhibit B does not support a determination of Corporal Punishment in that there was no evidence of any kind that Plaintiff committed an act of physical force for the purpose of punishing any pupil.

16.    The actions Plaintiff took, which did not involve the use of physical force, were, in fact, intended to calm a situation where a teacher and her class were being disrupted by the acts of a student.

17.    October 26, 2004, Plaintiff entered a classroom to obtain information about a student's attendance (Student X). In his hand, he had a rolled-up piece of paper concerning the attendance of Student X..

18.    As he entered the classroom, Plaintiff became aware of a tumult in the classroom. A student ("Student A") was kneeling on a chair, cursing out a female substitute teacher and disrupting the class. He approached the Student A, and gesturing with the hand in which he had the piece of paper, told Student A to "Zip it."

19.    Whereupon Student A, sat down and ceased his disruptive behavior.

20.    Plaintiff did not touch Student A. In the alternative, if the paper in his hand touched Student A, it was entirely accidental and unintentional. No one in the room observed Student A touched by the paper and Plaintiff does not believe it happened. Such accidental touching, if it occurred, was slight and caused absolutely no harm or damage or injury of any kind to Student A.

21.    Plaintiff regarded the incident as closed as he had accomplished his objective which was to help the substitute teacher restore order.

22.    A few days later, the father of Student A was contacted by the principal of the school because of Student A's truancy. The father then claimed that Student A had been sexually assaulted by Plaintiff because he had inserted a piece of paper in Student A's mouth for the purpose of obtaining sexual pleasure.

23.    That charge of inappropriate touching for sexual gratification was preposterous then and remains preposterous to this day.

24.    On November 16, 2004, the father of the child met with the principal of the school and repeated the charge.

25.    Likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Student A's father vigorously lobbied Plaintiff's supervisors to take strong action against Plaintiff and implicitly threatened legal action.

26.    Thereafter an investigation was initiated by the Chancellor's Office of Special Investigations ("OSI") which reported a substantiated incident of corporal punishment. A copy of that report is annexed hereto as Exhibit D.

27.    The investigating officer for OSI interviewed 9 students who witnessed the incident, including Student A. None of the student witnesses, except Student A, saw any touching of Student A by Plaintiff. They did confirm Student A's disruptive behavior. Student A dropped any claim that there was a sexual connotation to the incident. He was not in fact physically harmed, but stated he was "embarrassed."

28.    Student H stated to the OSI investigator that Student A had told him that he would "get Mr. Storman." (Exhibit D, p. D-3)

29.    No where in the report, does it state the cause of the embarrassment claimed by Student A and as a matter of fact, Plaintiff believes if there was any embarrassment, it was caused by Plaintiff telling Student A to stop his disruptive behavior rather than any alleged, accidental physical conduct.

30.    Likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, the investigating officer did not interview the substitute teacher who was in the classroom.

31.    According the Report, Ms. Marcella stated that Plaintiff prepared a written statement that in which he made an admission that he had touched Student A's mouth with a piece of paper in an effort to quiet him. Plaintiff denies ever making such an admission and no such written statement is a part of this record.

32.    The investigating officer later interviewed Plaintiff. No recording or transcript of the of the interview was made. A representative of the United Federation of Teachers (UFT), Plaintiff's union was present.

33.    According to the OSI report:

"Mr. Storman stated that he went to Student A's class to pick up a student that he services. The class had a substitute teacher. Student A was talking in a disrespectful manner to the teacher and was cursing. He approached Student A and he was holding a rolled up piece of paper in his hand. He **might** have brushed the piece of paper against Student A's lips and told him to be quiet. Mr. Storman denied that his actions were sexual in any way. Mr. Storman further stated that in retrospect he should not have touched Student A with the piece of paper." (Emphasis added)

34.     Plaintiff denies stating to the investigating officer that he might have brushed the piece of paper against Student A's lips.

35.     At no time, was Mr. Storman afforded any opportunity during the investigatory process to confront Student A and question him in regards to his accusations.

36.     The report concluded that:

"The allegation that Mr. Glen Storman placed a rolled up piece of paper into the mouth of Student A in a sexual manner is unsubstantiated. However, that Mr. Storman should not have made physical contact with Student A when he was reprimanding him."

37.     The Report of the investigation was forwarded to Plaintiff's supervising principal, Ms. Josephine Marcella with the following notation:

"The Chancellor's Office of Special Investigations has completed its investigation into the allegations of corporal punishment against Mr. Glen Storman [sic], [Social Security Number deleted] Based on information and facts gained during the investigation, it has been determined that this matter is:

| "SUBSTANTIATED: | X |
|---|---|
| "UNSUBSTANTIATED:" | |

(Exhibit D, p. D-1)

38.     The contents of said Report did not substantiate allegations of corporal punishment against Plaintiff. (See Report, Exhibit D, pp. D-2 to D-4)

39.     On being advised the findings of the Report, Mr. Solomon, the UFT representative who was present, issued the following statement:

"The last statement, paraphrasing Mr. Storman regretting touching Student A, was taken out of context. He said that he may have moved towards him, and if he touched him with the paper in his hand, it was accidental." (See Ex. E, Transcript of Hearing, pp. 49-50)

40.     Thereafter, in June, 2005, Exhibit A was issued rating Mr. Storman "U" [unsatisfactory] on account of "Substantiated Corporal punishment at P.S. 212" (Exhibit A)

41.     In violation of DOE policy, the Review was not provided Plaintiff in a timely

manner. Thereafter, Plaintiff appealed his rating.

42.    A hearing was held on his appeal on May 23, 2006. At that hearing both the investigating officer and the Supervising Principal admitted that Mr. Storman's conduct did not constitute corporal punishment. Exhibit E, p. 38-40.

43.    IN addition, Mr. Storman's union representative argued that the "U" rating based on the investigatory report was improper because at no time was Mr. Storman afforded the opportunity of confronting his accuser. Transcript, Exhibit E, p. 52-53

44.    A determination issued on August 14, 2006 denying Plaintiff's Appeal and sustaining his "U" rating on "as a consequence of a substantiated incident of corporal punishment." (See Exhibit B)

45.    A timely Notice of Claim was served upon the Department of Education, the New York City Comptroller and the New York City Corporation Counsel on November 8, 2006. Said matter has not been resolved and no hearing held.

46.    The determination that there was a "substantiated incidence of corporal punishment" is devoid of any legal or factual basis, and was based upon a procedure that denied Plaintiff fundamental constitutional rights including the right of confrontation and proof of wrongdoing by substantial evidence.

## 5. *Injustice and damage to the Plaintiff*

47.    The finding that Plaintiff has been guilty of an incidence of corporal punishment is gravely damaging to Plaintiff both financially and professionally.

48.    Until the finding of substantiated corporal punishment, Plaintiff had enjoyed an unblemished reputation as an able capable professional. Now, he will be forever marked by this finding and it will be a hindrance to him both as an employee of the DOE and in seeking employment in any other place.

49.    In addition, Plaintiff has lost his vested retention right to earn income from the DOE both as a Summer School teacher and Per Session Home Instructor.

50.    The reduction of income from his loss of Summer School teaching and Per Session Home Instructor will be compounded for decades because it will reduce his income

against which his pension will be calculated.

51.    That by reason of the foregoing, Plaintiff has lost financial benefits for the year 2005 in the sum of $23,000 and will lose financial benefits in excess of $1,000,000 in future years, including a reduction of reasonably anticipated pension benefits.

52.    Plaintiff performed no Home Schooling instruction and was denied appointment as a summer school teacher in 2007 because of his loss of retention rights.

### 6.  *Denial of Due process*

53.    The stigma of being found guilty of a "substantiated incident of corporal punishment" damages beyond repair Plaintiff's ability to pursue his chosen profession, in addition to denying him rights vested by the UFT Contract.

54.    Said unsatisfactory rating and the reasons for it will be available for inspection by any future employer and within the school system should he be considered for reassignment at anytime.

55.    The Fourteenth Amendment of the United States Constitution requires that in cases in which important liberty rights are implicated, that any deprivation of those liberty rights can only occur after notice and hearing and any adverse determination must be supported by a preponderance of the evidence.

56.    The determination of the Defendant that the Plaintiff was guilty of a substantiated incident of corporal punishment is arbitrary and capricious.

57.    Said determination is not supported by either a preponderance of the evidence or substantial evidence and is, in fact, devoid of any supporting evidence.

58.    In addition, Plaintiff was denied the right to confront Student A and cross-examine him about his claims.

### 7.  *Claim For Relief*

59.    By reason of the premises aforesaid, Defendant acting under color of law has deprived the Plaintiff of his liberty rights and property without due process of law in violation of 42 U.S.C. § 1983.

60.    By reason of the premises aforesaid, Plaintiff has been damaged in his property by reason of lost income and reasonably anticipated retirement benefits in the some of $1,000,000.

61.    Defendant's actions has caused Plaintiff severe emotional distress and anxiety, caused him to lose sleep and suffer pain and anguish because of the threat to his continued employment and the destruction of his career and reputation.

62.    The actions of the defendant damaged Plaintiff's otherwise harmonious relationship with his wife, creating domestic friction, further causing and enhancing his emotional distress.

63.    By reason of his emotional distress and damage to his marital relationship, plaintiff has been damaged in sum to be determined but not less than $1,000,000.

64.    By reason of the premises aforesaid the Plaintiff is entitled to judgment in the sum of $2,000,000 together with the costs and disbursements of this action including reasonable attorney fees pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiff prays that Court enter Judgment in the sum of $2,000,000 together with the costs and disbursements of this action including reasonable attorney fees.

Dated: New York, New York
       September 20, 2007

**JOHN C. KLOTZ**
Attorney for Plaintiff
350 Fifth Avenue, Suite 4810
New York, New York 10118
(212) 630-2600

TO:    MICHAEL A. CARDOZO
       Corporation Counsel of the
       City of New York
       100 Church St., Room 2-170
       New York, NY 10007

NEW YORK CITY BOARD OF EDUCATION
DIVISION OF PERSONNEL
OFFICE OF APPEALS AND REVIEWS
65 Court Street, Brooklyn, New York 11201
BE/DOP 995SC (5/87) pers d1  (Replaces OP 15B)

## ANNUAL PROFESSIONAL PERFORMANCE REVIEW AND REPORT ON PROBATIONARY SERVICE OF GUIDANCE COUNSELOR

| EMPLOYEE'S FULL NAME | LICENSE | FILE NUMBER |
|---|---|---|
| GLENN STROMAN | Guidance | 478435 |

EMPLOYEE'S COMPLETE HOME ADDRESS (Number and Street)   136 Vassar St. Staten Island   APT. NO   SOCIAL SECURITY NUMBER: 1 0 7 4 2 3 5 6 8

| CITY | STATE | ZIP CODE | | TENURED | PROBATIONER | SUBSTITUTE |
|---|---|---|---|---|---|---|
| Staten Island | N.Y. | 10314 | | | X | |

| CURRENT SALARY RATE $ | FOR PROBATIONERS: Date of Appointment (Jerome Credit does not apply) | Date of Completion of Probation |
|---|---|---|

| SCHOOL  P.S. 153 | BOROUGH  Bklyn. | DISTRICT  21/7 |
|---|---|---|

| | FIRST YEAR | | | | SECOND YEAR | | | | THIRD YEAR | | | | DAYS IN C.A.R. | OR BOR-ROWED DAYS | SUBSTI-TUTE SERVICE NO. OF DAYS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | TIMES NO. | TIME LOST | | | TIMES NO. | TIME LOST | | | TIMES NO. | TIME LOST | | | | | |
| | | DAYS | HRS. | MIN. | | DAYS | HRS. | MIN. | | DAYS | HRS. | MIN. | | | |
| LATENESS* | — | — | — | — | | | | | | | | | | | |
| ABSENCE* Exclude Non-Attendance | 2 | 2 | — | — | | | | | | | | | 135 | | |

* NOTE: For reports on probationers complete 1 to 3 years as applicable. For all other personnel use "First Year" to denote current year.

## SECTION 1 - REPORT BY PRINCIPAL OR OTHER APPROPRIATE SUPERVISOR:

| COMMENTS (as checked. "NA" indicates "Not Applicable.") | SATIS-FACTORY | UNSATIS-FACTORY | ADDITIONAL COMMENTS |
|---|---|---|---|
| **A. PERSONAL AND PROFESSIONAL QUALITIES** | | | |
| 1. Attendance and punctuality | | | |
| 2. Personal appearance | | | |
| 3. Voice, speech and use of English | | | |
| 4. Professional attitude and professional growth | | U | |
| 5. Sympathetic understanding of children | | | |
| 6. Resourcefulness and initiative | | | |
| **B. GUIDANCE ACTIVITIES** | | | |
| 1. Individual counseling with pupils | | | |
| 2. Group counseling with pupils | | | |
| 3. Individual staff development with teachers | | | |
| 4. Group staff development with teachers | | | |
| 5. Individual consultation with parents | | | |
| 6. Group consultation with parents | | | |
| 7. Preparation, maintenance and use of guidance materials | | | |
| 8. Participation in school activities | | | |
| 9. Participation in community activities | | | |
| 10. Agency referrals | | | |
| **C. GUIDANCE OFFICE MANAGEMENT** | | | |
| 1. Appearance and organization of office | | | |
| 2. Records and reports | | | |
| 3. Effective scheduling of time | | | |
| **D. INTERPERSONAL RELATIONSHIPS** | | | |
| 1. Rapport with pupils | | | |
| 2. Maintenance of good relations with teachers and with supervisors | | | |
| 3. Effort to establish and maintain good relationships with parents | | | |
| 4. Relationships with other pupil personnel workers | | | |

E. ADDITIONAL REMARKS (additional sheets, signed and acknowledged may be attached):

Substantiated Corporal Punishment at P.S. 212

## SECTION 2 - PERFORMANCE EVALUATION

| OVERALL EVALUATION  S, U, or D (D for first year probation only)  For the period: From 9/04 to 6/05 | U | SIGNATURE OF PRINCIPAL (If other - give title)   6/30/05   DATE | ACKNOWLEDGMENT BY EMPLOYEE I have received this report on: 09/07/05   DATE   SIGNATURE OF EMPLOYEE |
|---|---|---|---|

*(Complete Reverse Side for Probationary Personnel Only)*

EXHIBIT A: Annual Review

# THE NEW YORK CITY DEPARTMENT OF EDUCATION

JOEL I. KLEIN, *Chancellor*

OFFICE OF THE CHANCELLOR
52 Chambers Street  - New York, NY 10007

August 14, 2006

Chancellor's Committee
<u>Ira Goldberg, Chairperson</u>

Richard D'Auria, L.I.S., and Superintendent
District 21, Region 7
715 Ocean Terrace – Bldg. A
Staten Island, NY 10301

Carl Santa Maria, Principal
P.S. 153
1970 Homecrest Avenue
Brooklyn, NY 11229

Josephine Marsala, Principal
P.S, 212K
87 Bay 49th Street
Brooklyn, NY 11214

Glenn Storman – File No. 478435
136 Vassar Street
Staten Island, NY 10314

Dear Ms. Marsala and Gentlemen:

Please be advised that the appeal of Mr. Glenn Stroman from the rating of "Unsatisfactory" for the period ending June 2005 has been denied and the said rating is sustained as a consequence of a substantiated incident of corporal punishment.

Sincerely,

Andrés Alonso
Deputy Chancellor,
Teaching and Learning
(as designee for Joel I. Klein, Chancellor)

AA:rs

c:    Gary Barton, Deputy Executive Director, Regional Field Services
       Yvonne Kong, Director, Pedagogic Compensation
       Genevieve Aloia, Teacher Records
       Michael Grossman, Advisor, UFT

# EXHIBIT B: Chancellor's Determinatiom



NEW YORK CITY DEPARTMENT OF EDUCATION

# Regulation of the Chancellor

| Category: | STUDENTS | Number: | **A-420** |
|---|---|---|---|
| Subject: | PUPIL BEHAVIOR AND DISCIPLINE – CORPORAL PUNISHMENT | Pages: | 1 of 5 |
| | | Issued: | 11/16/04 |

## ABSTRACT

This regulation updates and supersedes Regulation of the Chancellor A-420, dated July 1, 2001, regarding prohibition of corporal punishment. It enforces Department of Education Bylaws and includes reporting requirements established under Regulations of the Commissioner §100.2(I)(3)(ii) concerning the use of physical force upon a student for punishment purposes. The Chancellor may change this Regulation consistent with applicable federal and state laws.

1. **INTRODUCTION**

   Corporal punishment is prohibited. Disruptive behavior by a student must never be punished by use of physical force. Such behavior usually reflects underlying problems that require guidance intervention. School personnel should take steps to identify the problem(s) and, working closely with parents, help the student receive maximum benefit from the educational program offered at the school. Matters concerning student behavior should be addressed in accordance with Chancellor's Regulation A-443 and the Discipline Code.

2. **DEFINITIONS**

   Regulations of the Commissioner §100.2(I)(3)(i) define corporal punishment as any act of physical force upon a pupil for the purpose of punishing that pupil. Such term shall not mean the use of reasonable physical force for any of the following purposes:

   1. to protect oneself from physical injury;

   2. to protect another pupil or teacher or any other person from physical injury (e.g. breaking up a physical altercation without using excessive force);

   3. to protect the property of the school or of others; or

   4. to restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district functions, powers or duties, if that pupil has refused to comply with a request to refrain from further disruptive acts, provided that alternative procedures and methods not involving the use of physical force cannot be reasonably employed to achieve the purposes set forth in 1 through 3 above.

**EXHIBIT C: Chancellor's Regulation A-420 (Corporal Punishment)**     **C-1**



NEW YORK CITY DEPARTMENT OF EDUCATION

# Regulation of the Chancellor

| Category: | STUDENTS | Number: | **A-420** |
|-----------|----------|---------|-----------|
| Subject: | PUPIL BEHAVIOR AND DISCIPLINE – CORPORAL PUNISHMENT | Pages: | 2 of 5 |
| | | Issued: | 11/16/04 |

Further, the Bylaws of the City Department of Education state the following:

**NO CORPORAL PUNISHMENT SHALL BE INFLICTED IN ANY OF THE PUBLIC SCHOOLS, NOR PUNISHMENT OF ANY KIND TENDING TO CAUSE EXCESSIVE FEAR OR PHYSICAL OR MENTAL DISTRESS. VIOLATION OF THIS BYLAW SHALL CONSTITUTE GROUNDS FOR DISMISSAL.**

This Bylaw remains in full force and effect and cannot be waived by prior approval or consent of parent or guardian. Nothing in this Regulation, however, prevents a supervisor from counseling or disciplining an employee for inappropriate conduct that is not otherwise in violation of this regulation.

3. **NOTIFICATION TO STAFF**

The principal must bring to the attention of all members of the staff the Board's policy and rules with respect to corporal punishment.

4. **REPORTING AN ALLEGATION OF CORPORAL PUNISHMENT**

   A.    Report to the Office of Special Investigations:

   Office of Special Investigations
   49 Chambers Street – 6th floor
   NY, NY 10007
   Voice: (212) 374-5900
   Fax:    (212) 374-1229/0932

The Chancellor's Office of Special Investigations is responsible for intake, evaluation, review, follow-up, and dissemination of information to various offices within this agency and other appropriate entities with respect to allegations of corporal punishment. All allegations of corporal punishment of students by Department of Education employees, custodial employees, or others must be reported *immediately* to the Office of Special Investigations by the supervisor or designee.[1]  Telephone communication must occur before an investigation is commenced by the supervisor or designee.

---

[1] For purposes of this Regulation, "supervisor" means the person acting in a supervisory capacity to the Department of Education employee alleged to have engaged in corporal punishment. If the person who is alleged

**EXHIBIT C: Chancellor's Regulation A-420 (Corporal Punishment)          C-2**



NEW YORK CITY DEPARTMENT OF EDUCATION

# Regulation *of the Chancellor*

| | |
|---|---|
| Category: STUDENTS | Number: **A-420** |
| Subject: PUPIL BEHAVIOR AND DISCIPLINE – CORPORAL PUNISHMENT | Pages: 3 of 5 |
| | Issued: 11/16/04 |

At the time of the communication the supervisor will be advised whether to conduct an investigation or await an investigation by the Office of Special Investigations. Further instruction will be given with respect to completing the A-420/A-421 Form – Alleged Corporal Punishment and/or Verbal Abuse – Report of Investigation (see Appendix), and to whether the staff member who is alleged to have engaged in corporal punishment should be removed from the classroom pending further inquiry. If the supervisor is not the Principal or site supervisor and the alleged corporal punishment occurs on or around school property, the principal or site supervisor must be notified. The principal, in turn must notify the superintendent.

In the event the supervisor is instructed to conduct the investigation, the Office of Special Investigations will provide guidance and instruction at any stage of the inquiry, as needed.

In general, a supervisor should take the following steps, among others:

- Take written statements from the victim and all witnesses as quickly as practicable;

- Separate witnesses prior to taking such statements;

- Meet with the subject of the investigation and give him or her an opportunity to review statements from the victim(s);

- Evaluate all of the evidence and the credibility of all witnesses including the subject of the investigation before substantiating or unsubstantiating a complaint.

- The supervisor must reach and state a conclusion on the A-420/A-421 Form.

- During the course of the investigation, the employee should be removed from the classroom whenever appropriate to safeguard the health, welfare, and safety of students. In determining whether to remove a teacher, the supervisor should consider the prior record of the employee, the likely penalty should the allegations be substantiated, and any other factors relevant to this determination. An employee who has been removed from the classroom pending investigation shall be informed in writing of the nature of the investigation no later than five days after their removal.

---

to have engaged in corporal punishment is not an employee of the Department of Education, the "supervisor" is the person who is in charge of the site where the incident is alleged to have occurred.

**EXHIBIT C: Chancellor's Regulation A-420 (Corporal Punishment)**          **C-3**



NEW YORK CITY DEPARTMENT OF EDUCATION

# Regulation of the Chancellor

| | | | |
|---|---|---|---|
| Category: | STUDENTS | Number: | **A-420** |
| Subject: | PUPIL BEHAVIOR AND DISCIPLINE – CORPORAL PUNISHMENT | Pages: | 4 of 5 |
| | | Issued: | 11/16/04 |

- Supervisors should consult with OSI whenever technical assistance or other assistance is needed.

The A-420/A-421 Form, completed as instructed, and bearing an original signature of the site administrator, must be filed with the Office of Special Investigations no later than five working days from the report of the incident. However, a supervisor must complete his or her investigation and determine whether discipline is warranted even if he or she fails to file the report within five days. A duplicate of the A-420/A-421 Form must be forwarded to the Superintendent.

The A-420/A-421 Form (Alleged Corporal Punishment and/or Verbal Abuse – Report of Investigation) should be completed and transmitted by e-mail or fax to the Office of Special Investigations and the Superintendent. The accurate transmission of the completed form is the responsibility of the supervisor. If the A-420/A-421 Form is transmitted by e-mail, the principal must print, sign, and maintain a hard copy.

Whether the investigation is conducted by the Office of Special Investigations or the supervisor, the person alleged to have engaged in corporal punishment must be afforded an opportunity to appear with representation and address the allegations upon 48 hours written notice prior to any action being recommended or taken.

The Principal, in consultation with the Superintendent, and with the Office of Legal Services, or the Office of Appeals and Review must take appropriate action against any staff member found to be in violation of the above Bylaw and this Regulation.

When it has been concluded after an inquiry either by the supervisor or the Office of Special Investigations that the staff member has not committed corporal punishment, or the evidence does not support the allegation, the staff member must be so notified, in writing. If the employee was reassigned during the investigation and there is no other reason for reassignments, the employee must be returned to his or her regular assignment.

B.  Report to the State

The Regulation of the Commissioner of Education regarding corporal punishment requires a semi-annual report to the Commissioner by January 15th and July 15 of each year. The report sets forth the substance of each complaint about the use of corporal punishment received by the local school authorities during the



NEW YORK CITY DEPARTMENT OF EDUCATION

# Regulation *of the Chancellor*

| Category: | STUDENTS | Number: | **A-420** |
|---|---|---|---|
| Subject: | PUPIL BEHAVIOR AND DISCIPLINE – CORPORAL PUNISHMENT | Pages: | 5 of 5 |
| | | Issued: | 11/16/04 |

report period, the results of each investigation and the action, if any, taken by the local school authorities in each case.

The Summary Corporal Punishment/Verbal Abuse Form is to be completed by December 15th and June 15th of each year. It is to be signed by the Principal and forwarded to the appropriate Superintendent for signature. The Superintendent is to forward the form to the Office of Special Investigations, Corporal Punishment Unit by December 30th and June 30th of each year.

**5.    INQUIRIES**

Inquiries pertaining to this regulation should be addressed to:

| Telephone<br>212-374-5900 | *Office of Special Investigations*<br>NYC Department of Education<br>49 Chambers Street – 6th floor<br>NY, NY 10007 | Fax<br>212-374-1229<br>212-374-0932 |
|---|---|---|

**OFFICE OF SPECIAL INVESTIGATIONS**
**49 CHAMBERS STREET, 6th FLOOR**
**NEW YORK, NEW YORK 10007**
**PHONE# (212) 374-5900**
**FAX# (212) 374-1229/0932/0993**

## ALLEGED CORPORAL PUNISHMENT AND/OR VERBAL ABUSE
## REPORT OF INVESTIGATION

Date of Report _____     Report Number _____
(Obtained from Office of Special Investigations (OSI)
(212) 374-5900)

### EMPLOYEE INFORMATION

Name _____     File Number _____
                                  Social
Position _____     Security # _____

Home Address _____

Date of Birth _____     License(s)

School _____ District _____ Boro _____ Region _____

Years of Service _____

|  | Prob | CPT | PPT | Per Diem |
|---|---|---|---|---|
| Tenured _____ | _____ | _____ | _____ | _____ |

### EMPLOYEE HISTORY

Prior Adverse Ratings/Actions     Yes          No          If yes, explain, including date(s)

_____

Form A-420/A-421
Page 2 of 5

Previous Allegations of
Corporal Punishment or Verbal    Yes          No          If yes, explain, including date(s)
Abuse                                                       and Report number(s)

## STUDENT (COMPLAINANT) INFORMATION

Name _____    Grade _____    Age _____

Date of Birth _____

Has student made prior allegations?                          Yes _____    No _____
If yes, explain, including date(s) and report number(s)

Narrative of student performance (conduct, etc.)

## PARENT/GUARDIAN CONTACT INFORMATION

Name _____

Address _____

Home Telephone _____

Business Telephone _____

Date Parent/Guardian notified of incident _____

School staff member who made contact _____

**EXHIBIT C: Chancellor's Regulation A-420 (Corporal Punishment)**          **C-7**

## WITNESS INFORMATION

Name _____    Position _____

_____    _____

_____    _____

_____    _____

**NOTE:** If witnesses are students, on a separate sheet of paper, please list the students' names with the contact information for their parent(s)/guardian(s).

## INCIDENT

**If student and/or staff members made written statements, copies of the statements *must* be attached.**

Date of Incident: _____    Time: _____
Location: _____

Description of Incident

After initial review of the incident, I concluded the following:

## ACTION TAKEN

For investigations not conducted by the Office of Special Investigations, the following must be completed. If necessary, additional information can be included on a separate sheet of paper and attached.

_____ The allegations were not substantiated. The subject was so advised by letter dated _____

**EXHIBIT C: Chancellor's Regulation A-420 (Corporal Punishment)**    **C-8**

**OR**

_____ The allegations were substantiated.

**In all cases where an allegation of corporal punishment and/or verbal abuse has been substantiated or where it has been concluded that poor judgment was used, disciplinary action must be taken.**

*TENURED STAFF*

_____ The subject is a  _____ Tenured teacher  _____ Tenured administrator

In the case of tenured teachers or tenured administrators, the punishment may include a verbal reprimand, letter of reprimand to file or charges under State Education Law §3020-a. If it has been determined that §3020-a charges might be warranted because of the serious or repetitive nature of the misconduct or other factors concerning the teacher's or administrator's performance, the Deputy Counsel, Administrative Trials Unit of the Office of Legal Services *must* be consulted. [(718) 935-3612]. Counsel should also be consulted if it is not clear what action may be appropriate.

_____ The subject was verbally reprimanded on

_____<br>(date)

_____ The subject received a letter to file, a copy of which is attached, on

_____<br>(date)

**OR**

_____ The Office of Legal Services was consulted on

_____<br>(date)

_____ Upon consultation, a letter to file, a copy of which is attached, was recommended.
_____ Upon consultation, a Technical Assistance Conference was scheduled for

_____<br>(date)

_____ Upon consultation, other action was recommended (Explain on a separate sheet)

*NON-TENURED PEDAGOGUES AND OTHER STAFF*

In the case of a substantiated allegation against a non-tenured pedagogue or other staff member, the Office of Appeals and Review [(718) 935-2991] *must* be consulted before any further action is taken.

The Office of Appeals and Review was contacted on

_____<br>(date)

_____ Upon consultation, a letter to file, a copy of which is attached, was recommended.
_____ Upon consultation, the staff member was terminated on

_____<br>(date)

_____ Upon consultation, other action was recommended. (Explain on separate sheet and attach)

**EXHIBIT C: Chancellor's Regulation A-420 (Corporal Punishment)**    **C-9**

Form A-420/A-421
Page 5 of 5

Report preparer's signature _____ Title _____

Date prepared _____

Revised November 2004

**EXHIBIT C: Chancellor's Regulation A-420 (Corporal Punishment)**     **C-10**

# THE NEW YORK CITY DEPARTMENT OF EDUCATION
JOEL I. KLEIN, *Chancellor*

## OFFICE OF THE CHANCELLOR

**TO:**      Ms. Josephine Marsella

**FROM:**    Thomas Hyland
             Deputy Director

**SUBJECT:** Mr.Glenn Storman
             Tenured Teacher, File # 478435
             PS 212K/Region 76
             Case # 04-7998CP

---

The Chancellor's Office of Special Investigations has completed its investigation into the allegations of corporal punishment against Mr. Glen STorman, SS# 0107-42-3568. Based on information and facts gained during the investigation, it has been determined that this matter is:

SUBSTANTIATED:       ☒

UNSUBSTANTIATED:     ☐

If this matter was substantiated a copy of this office's closing memorandum will be mailed to you for review and appropriate action. If this matter is unsubstantiated and the above named individual has been reassigned as a result of this investigation, please return him/her to service immediately.

Should you have any questions or need assistance, please call Confidential Investigator Dennis Boyles, at (212) 374-7835.

**EXHIBIT D: OSI Report**       **D-1**

## THE NEW YORK CITY DEPARTMENT OF EDUCATION
JOEL I. KLEIN, *Chancellor*

OFFICE OF THE CHANCELLOR

### MEMORANDUM

DATE:      February 9, 2005

TO:        Thomas W. Hyland
           Deputy Director

FROM:      Dennis Boyles
           Confidential Investigator

SUBJECT:   Mr. Glen Storman
           Guidance Counselor, Tenured Teacher, File # 478435
           PS 212K/Region 7
           Case # 047998

### ORGIN OF COMPLAINT

On 11/16/04, Ms. Josephine Marsella, Principal, PS 212K, contacted the Office of the
Special Commissioner of Investigation and reported that Parent A contacted her and
stated that she is not sending Student A, Male, DOB 04/10/04, to school because on
10/26/04, Mr. Storman approached Student A, and brushed a rolled up piece of paper
against his lips. Parent A stated that Student A believes that Mr. Storman was acting out
a sexual fantasy. OSCI referred case # 2004-2557 to OSI for investigation.

### BACKGROUND

1. A search of the OSI database disclosed that Mr. Storman has one prior case for
   harassment, Case # 01-0774, which was unsubstantiated. He has no prior CPU,
   OIG or OPI cases.
2. Technician Lawrence, BCI, NYPD, advised that Mr. Storman does not have a
   criminal history.

### RESULTS OF INVESTIGATION

On 12/14/04, Investigator Dennis Boyles responded to PS 212K. **Ms. Josephine
Marsella, Principal, File # 455034,** was interviewed.   She stated that on 11/16/04, that
Parent A (father) called her and stated that he is not sending Student A, **Male, DOB
04/10/04,** to school because on 10/26/04, Mr. Storman approached Student A and
brushed a rolled up piece of paper against his lips.  Student A believes that Mr. Storman
was acting out a sexual fantasy. Parent A indicated that he believed that Mr. Storman was
"getting off" when he did this. Ms. Marcella further stated that when she spoke to Student
A, he indicated that he was being disrespectful to a substitute teacher when Mr. Storman

**EXHIBIT D: OSI Report          D-2**

entered the classroom. She spoke to Mr. Storman who prepared a written statement regarding the incident in which he made an admission to touching Student A's mouth with a piece of paper, in an effort to quiet him. Ms. Marsella contacted the Office of the Special Commissioner of Investigation and reported the incident. Ms. Marcella further stated that on 11/16/04, Student A's class had a substitute teacher and Mr. Storman was responding to the class to pick up another student that he services. Ms. Marsella further stated that all the students in the class are Special Education, learning disabled. Student A was not present the day OSI visited.

The following Students were selected randomly and were interviewed in the presence of Ms. Marcella.

**Student B, Male, DOB 07/18/93,** was interviewed and stated that on 11/16/04, Ms. Massad was a substitute teacher and was teaching his class. Student A was talking and when Ms. Massad told him to be quiet, Student A was disrespectful and was cursing at her. Mr. Storman came into the room and told Student A to be quiet and not to curse. He did not see Mr. Storman touch Student A with a piece of paper.

**Student C, Male, DOB 09/24/93,** was interviewed and stated that he had no knowledge of the incident.

**Student D, Female, DOB 09/30/93,** was interviewed and stated she does not remember the incident.

**Student E, Female, DOB 07/28/93,** was interview and stated she does not remember the incident.

**Student F, Male, DOB 10/03/93,** was interviewed and stated he does not remember the incident.

**Student G, Male, DOB 07/07/93,** was interviewed and stated he does not remember the incident.

**Student H, Male, DOB 01/21/92,** was interviewed and stated that on 11/16/04, Ms. Massad was a substitute teacher and was teaching his class. Student A was talking and when Ms. Massad told him to be quiet. Student A then spoke to Ms. Massad in a disrespectful manner and he cursed at her. Mr. Storman came into the room and told Student A to be quiet and not to curse. He did not see Mr. Storman touch Student A with a piece of paper. He further stated that he had a conversation with Student A in which Student A said he was going to get Mr. Storman in trouble.

**Student I, Male, DOB 03/15/93,** was interviewed and stated that on 11/16/04, Ms. Massad was a substitute teacher and was teaching his class. Student A was talking and when Ms. Massad told him to be quiet, Student A was disrespectful and was cursing at Ms. Massad. He did not see Mr. Storman do anything inappropriate to Student A.

2

On 12/15/04, **Student A, Male, DOB 04/10/94**, was interviewed in the presence of his father and Assistant Principal, Deborah Dellcomo.  Student A admitted that on 11/16/04, he was talking in class and was disrespectful.  Mr. Storman came into the class and approached him and brushed a piece of paper on his lips and told him to be quiet.  Student A further stated that he does not believe that Mr. Storman's actions were sexual in nature. Student A, when questioned, stated that Mr. Storman did not hurt him, but that he was embarrassed at the time of the incident.

On 12/16/04, **Mr. Glen Storman, File # 478435,** was present at OSI with Mr. Arthur Solomon, UFT Representative.  This investigator advised him of the allegation made by Student A.  Mr. Storman stated that he went to Student A's class to pick up a student that he services.  The class had a substitute teacher.  Student A was talking in a disrespectful manner to the teacher and was cursing.  He approached Student A and he was holding a rolled up piece of paper in his hand.  He might have brushed the piece of paper against Student A's lips and told him to be quiet.  Mr. Storman denied that his actions were sexual in any way.  Mr. Storman further stated that in retrospect he should not have touched Student A with the piece of paper.

## CONCLUSION

The allegation that Mr. Glen Storman placed a rolled up piece of paper into the mouth of Student A in a sexual manner is unsubstantiated.  However, that Mr. Storman should not have made physical contact with Student A when he was reprimanding him.

## RECOMMENDATIONS

It is recommended that a copy of this report be forwarded to the Ms. Josephine Marcella, Principal, PS 212K, for whatever disciplinary action she deems appropriate.

SUBMITTED BY:

Dennis Boyles
Investigator

APPROVED BY:

Thomas W. Hyland
Deputy Director

3

**EXHIBIT D: OSI Report**          **D-4**

HEARING

OFFICE OF REVIEW AND APPEALS

DEPARTMENT OF EDUCATION

65 COURT STREET, ROOM 717

BROOKLYN, NEW YORK

MAY 23, 2006

**Angie DePompo**
**Court Reporting Service**
686 Kensico Street
Staten Island, New York 10306
(718) 667-9484

2

1

2          MR. GOLDBERG:    Today is Tuesday,

3      May 23rd, 2006.

4          Good afternoon.   I am Ira Goldberg,

5      assigned chairperson of this Chancellor's

6      Committee.

7          An attendance sheet has been

8      circulated at 65 Court Street.   The people

9      present today have signed their name.

10          Speaking to us from their school is

11      Josephine Marcella (phonetic), principal

12      of PS212, and Carl Santamaria, principal

13      of PS153.

14          It is now approximately 1:25 p.m. on

15      Tuesday, May 23rd, 2006.   We are meeting

16      pursuant to Article 4, Section 4.3.3,

17      formerly 5.3.4, to review the appeal from

18      a rating of unsatisfactory given by

19      Principal Carl Santamaria to Mr. Glenn

20      Storman, the appellant, who is a guidance

21      counselor at PS153 and PS212, for the

22      period ending June, 2005.   The appellant

23      is presently employed as a guidance

24      counselor.

25          I will now ask each of you to

Angie DeRosa Court Reporting Service
(718) 667-9484

3

identify yourselves for the record, and

state the capacity in which you are here

today.

MR. BOYLES:   Dennis Boyles,

confidential investigator, Chancellor's

Office for Special Investigations.

MR. GOLDBERG:   Would you speak up,

please.

MR. STORMAN:   Glenn Storman and

counselor.

MR. GROSSMAN:   Michael Grossman, the

appellant's advisor.

MR. GOLDBERG:   Ira Goldberg,

Chancellor's assigned chairperson for this

review.

The principals, please.

MR. SANTAMARIA:   Carl Santamaria,

PS153.

MS. MARCELLA:   Josephine Marcella,

PS212.

MR. GOLDBERG:   Okay.  We will now go

off the record to review the documents.

(Whereupon, a break was taken.)

MR. GOLDBERG:   We are now back on

4

the record.

I will briefly outline the procedures we will follow this afternoon.

The entire session is recorded. Proper protocol is to be adhered to at all times to facilitate this process. You are asked to be an active listener. Kindly use appropriate voice tone and level. You may request to go off the record at any point.

The UFT advisor will be asked to present any procedural objections. I will respond to each objection by denying or sustaining the objections.

The reigning officer will be asked to make a statement or stand on the record. Each member of the administration may make a statement as well.

The UFT advisor may cross-examine the rating officer and any member of the administration who makes a statement.

The appellant or his advisor will be asked to make a statement. The reigning officer may question the appellant, but

Angie DeLomae Court Reporting Service
(718) 667-9484

5

only through the chair.  The reigning

officer may make a final statement or

stand on the record.

The UFT advisor will make the final

statement.

Please be advised that a copy of this

proceeding can be obtained at a nominal

cost.

We will now -- does everyone have the

documents?

MS. MARCELLA:   I don't have mine.

MR. GROSSMAN:   Still waiting for

mine.

MR. GOLDBERG:   Okay.  We will go off

the record for a minute.

(Whereupon, a break was taken.)

MR. GOLDBERG:   We are back on the

record now.  I would like to ask the UFT

advisor if there are any procedural

objections.

MR. GROSSMAN:   Yes, I have.  I have

a procedural objection to the rate sheet.

You'll note that the -- while the

principal may have signed off on this June

6

30th, this was not given to Mr. Storman

until September 7th of 2005, which is well

after the rating period and also in

violation of Section 89 of the

Chancellor's Regulation, which I'll read

it for the record. It says as follows,

the mandate for the evaluation of

employees and the timing thereof is

contingent to Section 89.

Subdivision 7 is what counts for Mr.

Storman. It says in Subdivision 7, within

the last ten school days of each school

year, but not fewer than four school days

prior to the close thereof, the principal

of each school shall give to each member

of his or her staff a signed statement

characterizing his or her work as

satisfactory or unsatisfactory. This was

not done during the last ten school days,

not even the last four days, which would

be a technicality, but this is beyond

technicality because this was given to him

the next term or the next school year,

which was September 7th of 2005.

7

MR. GOLDBERG:   Was there any reason why there was a delay in giving the rating sheet?

MR. SANTAMARIA:   There was a clerical error in the distributing of the rating sheets.

Mr. Storman was told about the rating on June 29th, and he did receive certified mail, return receipt requested, on the 2nd day of summer school, the actual rating, on July 6th.

MR. GOLDBERG:   July what?

MR. SANTAMARIA:   6th.

MR. GOLDBERG:   Okay.

MR. GROSSMAN:   There is no proof of this.

MR. GOLDBERG:   Do you have a copy of that?

MR. SANTAMARIA:   I have the return receipt request little receipt.  Fax that?

MR. GOLDBERG:   You'll fax that to 935-2073.

MR. SANTAMARIA:   935-2073.

MR. GROSSMAN:   (Inaudible) that is

Annie DeRosa Court Reporting Service
(718) 667-9484

8

late, in terms of July, but whether it's
July or September, it doesn't make a
difference.

MR. GOLDBERG:    The rating sheet is a
legal document.  According to the rating
officer, the principal, there was a delay,
and it did go out at the beginning of
July, and there's postal return receipt
proof that it was mailed.  It was signed
off by Mr. Storman on September 7th.

Your objection is noted for the
record, but it is denied.

MR. GROSSMAN:    Okay.  I have an
objection to document number 2.  This is
from Thomas Hylan (phonetic) to Josephine
Marcella.  It is a third-party letter, and
also, it is undated.

MR. GOLDBERG:    If you look on page
2.1, the memo is dated February 9th, 2005.

MR. GROSSMAN:    It's not really the
same -- it's not really the same document.
In other words, technically speaking, this
should be treated as a separate document
because one, there's two Thomas Hylan, and

Angie DePompo Court Reporting Service
(718) 667-9484

9

1

2     the other one is twelve Thomas Hylan.  So,

3     if we treat this as a separate document,

4     then I'm objecting to this as a separate

5     document.  Not to the entirety.

6          MR. GOLDBERG:   This is a summary

7     page, saying that the investigation has

8     been completed, and it's attached to this

9     document.

10          MR. GROSSMAN:   All right, but,

11     however, it is undated, though.  In other

12     words, this is another memo that was sent.

13     It is not the same memo.

14          MR. GOLDBERG:   But it is referring

15     to the OSI report that is attached.

16          MR. GROSSMAN:   Yes, but, however, we

17     should know the date because if it's --

18     suppose, let's say, this was given after

19     April, then it would be more than six

20     months.  The statute of limitations is six

21     months for anyone from the Chancellor's

22     Office, in terms of handing out a

23     document.

24          MR. GOLDBERG:   The actual report is

25     dated February 9th, ---

10

1

2      MR. GROSSMAN:   Not the actual

3  report.

4      MR. GOLDBERG:   -- which is attached.

5      MR. GROSSMAN:   Okay, but I would

6  like it noted for the record that this

7  memo to Ms. Marcella was not dated.

8      MR. SANTAMARIA:   SOB and OSI is that

9  going to go out either before February 9th

10  or on February 9th with the report.  So,

11  it's a typographical error on my part, but

12  it certainly was done on or before

13  February 9th, 2005.

14      MR. GOLDBERG:   Your objection is

15  noted for the record, Mr. Grossman.

16      MR. GROSSMAN:   I'm curious.  How

17  could that be done before February 9th if

18  the memorandum itself is dated February

19  9th?

20      MR. SANTAMARIA:   Normally, when we

21  substantiate a case, okay, if the teacher

22  is reassigned, there is a period of time

23  to conclude your investigation from the

24  time you actually, you know, finish typing

25  your report, --

11

MR. GROSSMAN:    Okay.

MR. SANTAMARIA:    -- and if a teacher is reassigned and the case is not substantiated, we'll send it out to expedite the teacher getting back to the classroom as soon as possible, but if the case is going to be substantiated, we advise him that the case is substantiated and a report is to follow.

MR. GROSSMAN:    We'll concede what Mr. (inaudible) this.

MR. SANTAMARIA:    Thank you.

MR. GOLDBERG:    Any other objections?

MR. GROSSMAN:    No.

MR. GOLDBERG:    I call on the administration to make a statement or stand on the record, and I will ask -- afterwards, I would also ask Mr. Boyles to give a statement regarding the report.

I'll call on the principals first, if they would like to make a statement for the record or stand on the record.

MR. GROSSMAN:    They don't know who goes first.

12

   MR. GOLDBERG: Okay, let's define that.

   MS. MARCELLA: Can you explain what you're saying, please, --

   MR. SANTAMARIA: Yes, what does that mean exactly?

   MS. MARCELLA: -- because it's very difficult to understand you.

   MR. GOLDBERG: Okay.  Ms. Marcella, I would like you to make a statement for the record regarding why this pedagogue was given an unsatisfactory rating.  Why are we here today?  You know, why did you rate Mr. Storman unsatisfactory in June, 2005?

   MS. MARCELLA: Okay.  I rated Mr. Storman unsatisfactory because, although I did not conduct the investigation, I did sit in with Mr. Boyles, and the conclusion of his investigation was that it was substantiated for corporal punishment.

   Then, I met with Mr. Storman, with his union rep, and I wrote him a letter.

   Do you have the letter that Mr.

13

1

2       Storman received?  It is dated March 11th,

3       2005.

4           MR. GOLDBERG:   No.  No, you never

5       submitted that with the file.

6           MS. MARCELLA:   I submitted

7       everything, sir.

8           MR. GOLDBERG:   No, we do not have

9       that letter.

10          MS. MARCELLA:   Okay.  Do you want me

11      to fax it over to you?

12          MR. GOLDBERG:   No, not at this time.

13          It's okay.

14          MS. MARCELLA:   All right.  That was

15      in the package, though, everything I had

16      to submit.

17          MR. GOLDBERG:   Do you want to refer

18      to why you -- what kind of a letter and

19      what it was?  You can do that in oral

20      testimony.

21          MS. MARCELLA:   Well, do you want me

22      to read it?

23          MR. GROSSMAN:   I will object to

24      that.  She can refer to it.

25          MR. GOLDBERG:   You can refer to it.

14

```
 1
 2    I mean, --
 3         MS. MARCELLA:   Okay.
 4         MR. GOLDBERG:   -- you know,
 5    basically what it was.
 6         MS. MARCELLA:   All right.  I --
 7    basically, what happened was, when this
 8    incident occurred in October, I had asked
 9    Mr. Storman at that time if he wanted to
10    fill out a statement form, which is done
11    on a current sheet, and he did, and part
12    of his statement was that, he writes and I
13    quote, I may have touched the child's
14    mouth with the paper and walked away.
15         When I read Mr. Boyles' statement,
16    Mr. Storman -- and I quote from Mr.
17    Boyles' --
18         MR. GOLDBERG:   Report.
19         MS. MARCELLA:   -- from his report,
20    it says, I quote, Mr. Storman further
21    stated that in retrospect he should not
22    have touched student A with the piece of
23    paper.
24         So, in my letter, I wrote -- I spoke
25    to Mr. Storman with his union
```

Angie DeForco Court Reporting Service
(718) 867-9484          **Page 14**

15

representative, and he stated that he did

touch the student with the piece of paper,

and this is not acceptable.  There should

not be any contact with the student.  He

could have verbally reprimanded the child.

So, because it was substantiated by

Mr. Boyles, and because of what Mr.

Storman wrote about, may have touched the

child and walked away, and then in

retrospect should have not touched the

child with the paper, he is admitting that

he did touch the child, and there should

not be any physical contact.

So, my reasoning for giving him a "U"

rating is because of substantiated

corporal punishment.

Now, my -- also, I would like on the

record that I did report this to Mr.

Santamaria at the beginning of June.

MR. GOLDBERG:    Thank you.

Mr. Santamaria, any statement for the

record?  Any statement or stand on the

record?

MR. SANTAMARIA:    I guess -- no, not

16

really.  I stand on the record.

MR. GOLDBERG:   I would like to ask Mr. Boyles, from the Office of Special Investigators, if you would like to make a statement for the record?

MR. BOYLES:   Yes.  I interviewed -- I responded to the school after being assigned this investigation, and the initial complaint went to the Special Commissioner of Investigations, which referred it to my office for investigation.

The original complaint was from the boy's father, who indicated he believed that the physical contact made by Mr. Storman was sexual in nature, that he was having a sexual fantasy when he did this.

I spoke to several students at the school, who were all special education students.  It is my experience a lot of times special education students have a hard time remembering incidents of this nature.

Student A indicated that Mr. Storman

Angie DePompo Court Reporting Service
(718) 667-9484                **Page 16**

17

rolled up a piece of paper and touched him

on his face with it, and the student

admitted at the time that he didn't think

it was sexual in nature.

Mr. Storman, based on his written

statement and the conversation I had with

him, where he said he might have touched

the kid when he was motioning for him to

be quiet because he had a piece of paper

in his hand, based on that, I

substantiated for inappropriate touching,

and I forwarded the report to Ms.

Marcella.

MR. GOLDBERG:   Thank you.

MS. MARCELLA:   May I say something

else?

MR. GOLDBERG:   Yes.

MS. MARCELLA:   Okay.

MR. GOLDBERG:   Yes.

MS. MARCELLA:   Oh, I can?

MR. GOLDBERG:   Yes.

MS. MARCELLA:   Oh, okay.  I just

wanted to mention that because I am not

Mr. Storman's payroll school, the

18

principal of the school, that's why I

could not give him his rating sheet.

MR. GOLDBERG:    I understand.  We

understand that.

MS. MARCELLA:    Okay.

MR. GOLDBERG:    Okay, thank you.

I would like to call on the UFT

advisor, Mr. Grossman, to question the

administration or --

MR. GROSSMAN:    Yes, right.  I'm

going to do everybody.

MR. GOLDBERG:    Of course.

MR. GROSSMAN:    Okay.  Mr.

Santamaria, can you hear me okay?

MR. SANTAMARIA:    Yes.

MR. GROSSMAN:    Okay.  When you rated

Mr. Storman unsatisfactory, was that based

upon a conclusion on the part of Ms.

Marcella that corporal punishment was

committed?

MR. SANTAMARIA:    Correct, yes.

MR. GROSSMAN:    Okay, but, however,

did you see any documentation at all from

that charge or just based it upon Ms.